# In re Bartolome Jhonny SORIANO, Respondent

### File A39 186 067 - Napanoch

*Decided by Board June 27, 1996*
*Decided by Attorney General February 21, 1997*

### U.S. Department of Justice
### Executive Office for Immigration Review
### Board of Immigration Appeals

(1) The 1996 amendments to section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1994), bar relief to aliens deportable by reason of having committed any of the criminal offenses described in the amended section 212(c).

(2) The Attorney General vacates the decision of the Board of Immigration Appeals and holds that the bar to relief under the amended section 212(c) applies to all applications pending on the April 24, 1996, effective date of the amendments.

(3) Pursuant to the order of the Attorney General, aliens who conceded deportability in reliance on the availability of section 212(c) relief before April 24, 1996, may petition the Executive Office for Immigration Review for reopening of the proceedings for the limited purpose of permitting the alien to contest deportability.

FOR RESPONDENT: Barry F. Kenyon, Esquire, New York, New York

AMICUS CURIAE FOR THE RESPONDENT: Nadine K. Wettstein, Esquire, Tucson, Arizona

AMICUS CURIAE FOR THE RESPONDENT: William W. Chip, Esquire, Washington, D.C.

FOR IMMIGRATION AND NATURALIZATION SERVICE: David M. Dixon, Chief Appellate Counsel

## BEFORE THE BOARD
### (June 27, 1996)

BEFORE: Board En Banc: SCHMIDT, Chairman; HEILMAN, HOLMES, VILLAGELIU, MATHON, and GUENDELSBERGER, Board Members. Concurring and Dissenting Opinion: ROSENBERG, Board Member. Dissenting Opinion: VACCA, Board Member, joined by DUNNE, Vice Chairman; HURWITZ, FILPPU, and COLE, Board Members.

HEILMAN, Board Member:

In a decision dated October 12, 1995, an Immigration Judge found the respondent deportable as charged, denied his application for a waiver of inadmissibility pursuant to section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1994), and ordered him deported from the United States to the Dominican Republic. The respondent appealed from that decision on October 23, 1995. Subsequent to the respondent's appeal, Congress amended section 212(c) of the Act, and the Immigration and Naturalization Service has now filed a supplemental brief in response to the respondent's argument, asserting that the recent legislative amendments preclude the respondent from demonstrating his continuing eligibility for section 212(c) relief.[1] Thus, we are faced with the issue regarding the effective date of section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, 1277 ("AEDPA"). We find the respondent eligible for section 212(c) relief, but will deny his appeal as a matter of discretion.

## I. PROCEDURAL HISTORY

The respondent is a native and citizen of the Dominican Republic. He entered the United States on March 28, 1985, as a lawful permanent resident. On May 20, 1992, the respondent was convicted under the law of the State of New York of the offense of attempted criminal sale of a controlled substance. Based on this conviction, the Service initiated deportation proceedings against the respondent with the issuance of an Order to Show Cause and Notice of Hearing (Form I-221) dated June 3, 1994. On April 28, 1995, the respondent filed an Application for Advance Permission to Return to Unrelinquished Domicile (Form I-191) pursuant to section 212(c) of the Act. By order dated October 12, 1995, the Immigration Judge found that the respondent was eligible for relief under section 212(c) of the Act, but denied that application in the exercise of discretion. On appeal, the respondent argues that the Immigration Judge erred in the exercise of that discretion.

## II. APPLICABLE LAW

Prior to considering the respondent's appeal of the Immigration Judge's discretionary determination, this Board must first address the Service's contention that the recent amendments to section 212(c) of the Act statutorily bar the Board from considering the merits of the respondent's appeal from his section 212(c) application. We note initially that the respondent was clearly eligible for such relief under the law in effect at the time the Immigration Judge rendered his decision.[2]

---

[1] We acknowledge the contribution of amici in the briefing of this issue to the Board.

[2] Until April 24, 1996, section 212(c) of the Act read as follows:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful

However, during the pendency of the respondent's appeal from the Immigration Judge's discretionary denial of his application, Congress amended section 212(c) of the Act to read as follows:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of section (a) (other than paragraphs (3) and (9)(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion invested in [her] under section 211(b). *This section shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i).*

Section 440(d) of the AEDPA, 110 Stat. at 1277 (emphasis added).

The respondent, deportable by reason of having committed an offense covered by sections 241(a)(2)(A)(iii) and (B) of the Act, falls within the last sentence of the AEDPA amendment. Thus, we must decide whether Congress intended the respondent to remain eligible for section 212(c) relief after April 24, 1996.

## III. EFFECTIVE DATE

Congress did not incorporate an express provision regarding the effective date of section 440(d) of the AEDPA. Initially, then, we must discern the date on which this section of law became effective, and, if effective immediately, whether it applies to those aliens already in proceedings as of April 24, 1996. If it does so apply to those aliens in proceedings, we must further determine whether the amendment applies to those aliens who filed their section 212(c) applications by April 24, 1996. In resolving these issues of the AEDPA's temporal applicability, we first look to the language of the statute itself. We begin by noting that the paramount index of congressional intent is the plain meaning of the words used in the statute taken as a whole. See Matter of Grinberg, 20 I&N Dec. 911 (BIA 1994) (citing *INS v. Cardoza-Fonseca,* 480 U.S. 421, 431 (1987)); *see also K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) (stating that in ascertaining the "plain meaning" of a statute, one "must look to the particular statutory language at issue, as well as the language and design of the statute as a whole").

---

unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of section (a) (other than paragraphs (3) and (9)(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion invested in [her] under section 211(b). The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

## A. Section 440(d) and Pending Proceedings

Initially, we find persuasive evidence to conclude that Congress intended section 440(d) to apply immediately, regardless of whether the Service had placed an alien in proceedings by April 24, 1996. Both general statutory construction and an examination of Congress' inclusion of other effective dates in the AEDPA lead us to this result. General rules of statutory construction hold that the lack of an effective date for legislation indicates that the law should be effective on the date of passage. *See generally* 2 C. Sands, *Sutherland Statutory Construction* § 33.08 (4th ed. 1973). We find no obstacle to the application of this rule in the language of the AEDPA; rather, we find such an interpretation buttressed by Congress' decision to expressly delay the effective date of other subsections of the AEDPA. For example, in section 414(b) of the AEDPA, 110 Stat. at 1270, Congress expressly provided that this amendment "shall take effect on the first day of the first month beginning more than 180 days after the date of the enactment of [the AEDPA]." Similarly, in section 442 of the AEDPA, 110 Stat. at 1280, Congress amended section 242A(b) of the Act with regard to certain procedural aspects of deportation hearings and stated, in subsection 442(d), that those amendments "shall apply to all aliens against whom deportation proceedings are initiated after the date of the enactment of [the AEDPA]." The absence of similar language in section 440(d) supports the conclusion that Congress intended section 440(d) of the AEDPA to apply to aliens already in proceedings on April 24, 1996. These express declarations in other subsections of the AEDPA, in conjunction with Congress' silence in section 440(d) of the AEDPA, lead us to conclude that section 440(d) was effective immediately upon enactment and was *not* limited in applicability to those aliens whose proceedings were initiated after that date.

## B. Pending Applications

However, this finding that section 440(d) of the AEDPA was effective immediately and not limited in application to those aliens brought into proceedings after April 24, 1996, does not finally resolve whether this respondent is barred from section 212(c) relief. There remains a subcategory of aliens, including the respondent, who already had applications for section 212(c) relief pending on April 24, 1996. Such aliens include those deportable aliens awaiting their section 212(c) merits hearings, as well as those aliens who have appealed the Immigration Judge's denial of their applications, and those who, having received a grant of section 212(c) relief, are subject to a Service appeal of the Immigration Judge's decision. In determining congressional intent from the language and design of the AEDPA as a whole, we do not find that Congress' silence regarding the effective date of section 440(d) reflects an intent for the amendment to bar pending applications for section 212(c) waivers. In reaching this conclusion, we note that in section 413 of the

AEDPA, which bars alien terrorists from most forms of relief from deportation, Congress expressly indicated that those bars to relief "shall take effect on the date of enactment of [the AEDPA] and shall apply to applications filed before, on, or after such date if final action has not been taken on them before such date." *See* section 413(g) of the AEDPA, 110 Stat. at 1269-70.

Another basic rule of statutory construction instructs that no provision of law should be so construed as to render a word or clause surplusage. *See Kungys v. United States*, 485 U.S. 759 (1988); *Colautti v. Franklin*, 439 U.S. 379 (1979). By adding the effective date found at section 413(g) of the AEDPA, Congress expressed its clear intent that section 413 of the AEDPA apply specifically to pending applications of alien terrorists. To construe this same intent by Congress' silence in section 440(d) of the AEDPA would require us to conclude that the "before, on, or after" language of section 413(g) of the AEDPA is unnecessary and irrelevant to whether that section applies to applications for asylum pending before the AEDPA's enactment. This we decline to conclude. Rather, we interpret Congress' omission of the "before, on, or after" language in section 440(d) to indicate its intent that aliens with applications pending on April 24, 1996, should not be statutorily barred from section 212(c) relief by operation of the AEDPA.[3]

This conclusion is consistent with the approach to statutory interpretation set forth by the United States Supreme Court in *Landgraf v. USI Film Products,* 511 U.S. 244 (1994). In that case, the Supreme Court observed that when deciding whether changes in law should be applied to pending controversies in the absence of express congressional directive, "settled expectations should not be lightly disrupted." *Landgraf v. USI Film Products, supra*, at 265. By applying section 440(d) of the AEDPA to only those applications for section 212(c) relief filed on or after the date of the enactment of the AEDPA, the unique expectations of aliens whose applications for section 212(c) relief were pending prior to the enactment of the AEDPA are not disrupted. Such aliens demonstrated, with the filing of their pre-AEDPA applications, their expectation that although they were deportable under various provisions of the Act, they would be able to present evidence of favorable social and humane considerations that might countervail evidence of their undesirability as lawful permanent residents. *See generally Matter of Marin,*

---

[3] Similarly, we note that silence cannot reasonably be interpreted as evidencing a congressional intent to apply the new limitations in section 212(c) only to those aliens whose *convictions* for the relevant offenses occurred on or after the date of enactment of the AEDPA because Congress expressly stated that result in the AEDPA when such was its intent. *See* section 440(f) of the AEDPA, 110 Stat. at 1278 (stating that the amendments to the aggravated felony definition "apply to convictions entered on or after the date of enactment"). Moreover, as regards the issue of "settled expectations" discussed below, both the Board and the courts have noted that aliens cannot reasonably argue "'that they somehow relied on the availability of a discretionary waiver of deportation when choosing to engage in [criminal] activity.'" *Matter of Gomez-Giraldo*, 20 I&N Dec. 957, 964 (BIA 1995) (quoting *DeOsorio v. United States INS,* 10 F.3d 1034, 1042 (4th Cir. 1993)).

16 I&N Dec. 581 (BIA 1978). The interpretative approach enunciated by the Supreme Court in *Landgraf* supports the conclusion that Congress did not intend by its silence to disrupt the expectations of those aliens whose applications for section 212(c) relief were pending on April 24, 1996.

Moreover, this conclusion is consistent with the approach adopted by Congress with its amendment of section 212(c) of the Act by the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, in which a statutory 5-year aggravated felony bar to that relief was made applicable to aliens who applied after the date of the enactment of that 1990 amendment. *See Matter of Gomez-Giraldo,* 20 I&N Dec. 957, 963 (BIA 1995).

## C. Applicability to Respondent's Section 212(c) Request

The respondent applied for section 212(c) relief on April 28, 1995, prior to the April 24, 1996, enactment of the AEDPA. Accordingly, the bar to section 212(c) relief added by the amendment of that section by section 440(d) of the AEDPA does not apply to the respondent's application for relief. There is no question that the respondent is eligible for section 212(c) relief by the version of that section that was in effect prior to its amendment by section 440(d) of the AEDPA. That is, the respondent is not an alien convicted of an aggravated felony who served for such felony a term of imprisonment of at least 5 years. Thus, we find the respondent eligible for relief under section 212(c) of the Act, and we proceed to the question of whether he merits that relief in the exercise of discretion.

## III. DISCRETION

Notwithstanding the respondent's continued eligibility for a waiver of inadmissibility, we ultimately disagree with his appellate argument that the Immigration Judge erred in finding that he did not warrant a discretionary waiver pursuant to section 212(c) of the Act. As the Immigration Judge correctly noted, the respondent's attempted criminal sale of cocaine, in addition to his three other drug-related felonies, require a demonstration of outstanding or unusual equities before the respondent may receive a section 212(c) waiver of inadmissibility. *See Matter of Marin, supra; cf. Matter of Burbano,* 20 I&N Dec. 872, 879 (BIA 1994). We agree with the Immigration Judge that the respondent has failed to demonstrate such equities so that he may overcome his serious and recent drug trafficking crimes.

The respondent testified at the hearing that he has various family ties in the United States, including his mother, two siblings, and his United States citizen son. Moreover, the respondent explained that his son lives with his ex-wife, and that his family assists them financially. The respondent's mother and sister also testified on his behalf, and while we find it noteworthy that the respondent's family members attended the hearing, we do not find that this familial support alone rises to the level of outstanding or unusual.

The respondent maintains various family ties in the Dominican Republic, including three daughters and four siblings. He arrived in the United States only 10 years ago as a 25-year-old adult, and his employment during his residence in the United States has been sporadic.

Regarding his rehabilitative efforts, we note that the respondent testified that he has participated in a drug rehabilitation program while he has been incarcerated, and that after 18 years of drug use, he has maintained a drug-free lifestyle while in prison. Moreover, he testified that he has also received his GED while incarcerated, and he has recently strengthened his religious beliefs. We agree with the Immigration Judge that the respondent has demonstrated a willingness to continue his progress towards a drug-free and crime-free lifestyle and has taken steps towards rehabilitation. See *Matter of Arreguin,* 21 I&N Dec. 38 (BIA 1995). However, considering these factors in conjunction with his family ties here and abroad, and his relatively short period of residence in the United States, we can not find that the respondent has demonstrated sufficient equities to overcome his four recent drug trafficking felonies. *Cf. Matter of Burbano, supra*. Accordingly, we will dismiss the respondent's appeal.

**ORDER:** The appeal is dismissed.

*CONCURRING AND DISSENTING OPINION:* Lory D. Rosenberg, Board Member

I respectfully concur in part and dissent in part.

Our decision today seeks to resolve the ambiguity presented by section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, 1277 (enacted Apr. 24, 1996) ("AEDPA"), which amends the category of otherwise eligible lawful permanent resident aliens precluded from a waiver under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c)(1994).

The text of this section, as set forth by the majority, contains no express provision specifying an effective date for this amendment. The majority opinion properly recognizes that the fact that the AEDPA became law on April 24, 1996, is not dispositive of the effect of section 440(d) on an alien who "is deportable" on the grounds of deportability designated in that section.[1]

In essence, we hold that two related factors, traditional principles of statutory construction and Supreme Court law interpreting the application of new statutes to pre-existing circumstances, must control the reach of this

---

[1] This "ill-advised" provision of AEDPA is less than artfully drawn, having been enacted at the 11th hour as part of a bill ostensibly addressing the deportation of terrorists, not the deportation of "long-term legal residents." *See* President's Remarks on Signing the Antiterrorism and Effective Death Penalty Act of 1996, 32 Weekly Comp. Pres. Doc. 717 (Apr. 29, 1996). While section 440(d) refers to those "deportable by reason of having committed any criminal offense covered" by specified sections of the Immigration and Nationality Act, the only aliens so deportable are aliens who actually have been convicted of such offenses.

provision of the AEDPA. *See Landgraf v. USI Film Products*, 511 U.S. 244 (1994). In the context of the appeal before us, it is necessary only to find, as the majority does, that the amendment does *not* apply to pending applications already filed by aliens in deportation proceedings. Thus, the respondent, who is deportable by reason of a conviction for a covered offense, remains eligible to have his pending application for a waiver of deportability under section 212(c) determined. For purposes of the scenario presented in this appeal, I concur.

## I. THE SILENCE OF THE STATUTE

The silence of the statute with regard to its impact upon conduct and other events which already have taken place is significant. Nothing in the text or the legislative history of the AEDPA indicates that section 440(d) should be applied retroactively to pending cases or pre-amendment circumstances, or that this silence was due to an "accident of draftsmanship." *INS v. Phinpathya*, 464 U.S. 183, 191 (1984). By contrast, as the majority discusses, other sections of the AEDPA expressly address the effect of the particular provision on circumstances existing prior to its enactment. *See, e.g.,* section 413(g) of the AEDPA, 110 Stat. at 1269-70.

As recognized consistently by the Supreme Court, retroactivity is not favored in the law. *Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 208 (1988). A presumption against retroactivity generally is consistent with legislative and public expectations as a safeguard against unfairness. *Landgraf v. USI Film Products, supra,* at 272. This principle dates back to English common law, and even to Roman law. *See, e.g., United States v. Heth*, 7 U.S. (3 Cranch) 399, 413 (1806); *Dash v. Van Kleeck*, 7 Johns. 477, 502-03, 505 (N.Y. 1811) (the prince may enact a retrospective law as long as it is done expressly).[2]

In *Landgraf v. USI Film Products, supra*, the Supreme Court restated the principle that a statute shall not be given retroactive effect unless expressly provided by Congress. Specifically, the Supreme Court cautioned that "[a] statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct which occurred prior to that date." *Id.* at 1493.

To the extent that the majority decision is understood to mean either that the language in the statute as a whole is reconciled or that the *Landgraf* principles, discussed below, are properly observed only by finding that aliens who have *filed applications* for section 212(c) waivers by April 24, 1996, are

---

[2] *See Demelo v. Cobb*, 936 F. Supp. 30 (D. Mass. 1996) (discussing the specific language in the AEDPA relating to restrictions upon release from custody, and concluding that any interpretation of the Act applying it to offenses committed before April 24, 1996, (and convictions obtained before that date) would raise serious constitutional issues).

not subject to section 440(d), I must differ. I write separately because I believe this Board's decision requires clarification on these points.

## II. STATUTORY CONSTRUCTION AND RETROACTIVITY

As the agency implementing the statute, we recognize that a statutory construct involving silence in one provision but not another requires us to give effect to each provision. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281 (1988); *see also INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987) (holding that the Board may not blur the distinctions between two related but separate statutory standards or reduce them into one); *Matter of Hou*, 20 I&N Dec. 513 (BIA 1992) (recognizing that Congress' use of different terminology in two sections of the statute requires the Board to give each independent effect).

In fact, this is precisely what was done by this Board in *Matter of A-A-,* 20 I&N Dec. 506 (BIA 1992), where we looked to the statutory language in various sections of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, in order to determine the applicability of the amendment of section 212(c) contained in that enactment. Although the section was silent as to its applicability to prior convictions, the express language of the statute made that amendment applicable to pending applications.[3]

Coupled with the principle enunciated by the Supreme Court in *Landgraf v. USI Film Products, supra,* at 266, that when new provisions attach new legal consequences to prior events, "settled expectations should not be lightly disrupted" (unless Congress expressly states such an intent), these precepts militate in favor of adjudicating the respondent's waiver application according to the prior law. For the sake of brevity, I will refer to these two considerations—the requirement that we must interpret silence in a provision so as to give effect to the whole statute, and the doctrine of settled expectations as foreclosing the retroactive application of a new or amended statute to prior conduct—as the "*Landgraf* principles."

Semantic sparring over whether a new provision can be retroactive because it is being applied to an adjudication we are conducting in the present is not a useful exercise. Nonetheless, the dissent focuses on the application, which is a continuing one, rather than on past events and expectations which are settled, and avoids addressing the issue. The issue is whether the new provision *operates* retroactively. That is, does it affect the settled expectations of the parties, in this case, the respondent, as best described in the *Landgraf* principles.[4] Moreover, this Board previously has acknowledged

---

[3] I note that our decision in *Matter of A-A-, supra*, also involved a situation, not present here, in which a retroactive application was necessary in order for the law to be effective. *See also Matter of Gomez-Giraldo,* 20 I&N Dec. 957 (BIA 1995) (finding 5-year incarceration bar would be delayed for 5 years if not applied to prior convictions).

[4] The predisposition against a retroactive construction of laws which operate to affect prior conduct is the principle that an individual should be able to act with reasonable certainty of the

that eliminating section 212(c) relief *does* have retroactive effect. *Matter of Gomez-Giraldo*, 20 I&N Dec. 957, 963 (BIA 1995); *Matter of A-A-, supra.*

In this instance, even though the determination of eligibility for a waiver under section 212(c) may be prospective, the restriction in the amended provision has a retroactive operation or effect as it constitutes a new legal consequence which attaches, at a minimum, to any lawful permanent resident already subject to an Order To Show Cause or otherwise in the agency "pipeline." It is arguable that the legal consequences attach, in fact, to the conviction itself and even to the commission of the offense. Thus, as I discuss below, I believe that to find the amended provision applicable to all applications, as does the dissent, or only to already-filed and pending applications, as does the majority, falls short of the proper observance of the *Landgraf* principles.

## A. *Landgraf* Principles and Board Precedent

Previously, the Board held that where new statutory provisions affecting eligibility for relief from deportation come into effect during the pendency of a deportation hearing or an administrative appeal to this Board, and there exists no statutory directive to the contrary, the new statutory provisions shall be applied to the application for relief before us, and the application may be denied on the basis of the statutory amendment. *Cf. Matter of U-M-*, 20 I&N Dec. 327 (BIA 1991), *aff'd*, 989 F.2d 1085 (9th Cir. 1993). Although the dissent clings to this position, it simply is not applicable here.

Since our decision in *Matter of U-M-, supra*, the United States Supreme Court issued its decision in *Landgraf v. USI Film Products, supra*, in which it comprehensively discussed the issue of the application of statutory amendments to pending controversies. As I understand the dissent to assert that a silent statute is not only effective when signed by the President, but applies to all prior or pending events or conduct, I note that in *Landgraf*, the Supreme Court reconciled the apparent conflict between the presumption that "a court must apply the law in effect at the time it renders its decision," and the presumption against retroactivity. *Landgraf v. USI Film Products, supra*, at 245 (citing *Bradley v. Richmond School Board*, 416 U.S. 696, 711 (1974)).

In fact, in *Matter of Gomez-Giraldo, supra*, in which we last visited the impact of the Supreme Court's reasoning in *Landgraf v. USI Film Products, supra*, we held that the aggravated felony bar added to section 212(c) of the Act by a previous amendment implicated none of the concerns enunciated in *Landgraf*. We reasoned that, because that amendment, by its express terms, applied only to those applications for relief made on or after the effective date

---

legal consequences. *See Chew Heong v. United States,* 112 U.S. 536, 559 (1884); *see also* Charles B. Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv. L. Rev. 692 (1960).

of the amendment, it would not disturb a lawful permanent resident's settled expectations that he or she could apply for and be granted a waiver under section 212(c). *Matter of Gomez-Giraldo, supra*, at 963-64. Our holding today, relating to an amendment with no express language, is entirely consistent with that decision and the reasoning underlying it.

B. *Landgraf* Principles and Factual Scenarios Under Section 440(d)

In *Landgraf v. USI Film Products, supra*, the Supreme Court set out a basic test to determine whether a statute would operate "retroactively" or "retrospectively" if applied to a case pending at the time of the statute's enactment. The Court stated that the question a body must ask is "whether the provision attaches new legal consequences to events completed before its enactment." *Id*. at 1499.

The first question presented is, which cases, if any, in the agency "pipeline" are affected? The majority limits its determination to persons who have already filed applications for relief under section 212(c). There remains an open question, however, whether the amendment applies to all potential candidates for the waiver already "in the pipeline."

Arguably, the "pipeline" could include various categories of individuals who are alleged to be deportable under the pertinent sections of the statute, and who are otherwise eligible for and require the grant of a waiver under section 212(c) in order not to be deported. Assuming the main, more comprehensive group to be putative candidates who have been identified by the Immigration and Naturalization Service as deportable aliens is consistent with the *Landgraf* principles.

This could encompass aliens who are the subject of a "detainer" placed against them during their incarceration for a criminal offense as the result of a request by the Service; it could include those served with an Order to Show Cause issued by the Service; and it could include those subject to an Order to Show Cause against whom deportation proceedings have commenced as defined under the regulations. It could include those who have filed an application for a waiver under section 212(c) in proceedings before an Immigration Judge; those who are seeking to reopen to apply for 212(c) relief; and those who have received an order from an Immigration Judge from which an appeal has been taken to the Board and/or to the circuit courts of appeal.

In particular, this Board only recently recognized decisions of the United States Courts of Appeals for the Second, Seventh, and Ninth Circuits, which hold that the statutory language of section 212(c) makes plain that an alien may establish lawful domicile while in a status other than that of a permanent resident. *See Matter of Cazares*, 21 I&N Dec. 188 (BIA 1996) (holding that a temporary resident under section 245A of the Act may accrue time towards 7-year lawful domicile requirement of section 212(c)). Further, the Fifth Circuit held specifically that temporary residents under both the legalization

(section 245A) and special agricultural worker ("SAW")(section 210) provisions may accrue lawful domicile while in that status. *See White v. INS*, 75 F.3d 213 (5th Cir. 1996).

This Board has remanded appeals from decisions arising in those circuits to allow applications for section 212(c) to be filed and heard in the first instance or for a hearing on the merits when such was pretermitted by the Immigration Judge. The majority overlooks these cases; while not explicitly implicated in our decision today, the truncated interpretation of the majority leaves unresolved hundreds of cases of individuals who we found to have been entitled to consideration at least under controlling circuit law, but whose applications were unlawfully pretermitted and foreclosed. In my view, such applicants are entitled to the opportunity to seek relief from deportation under section 212(c) whether or not they have a pending application on file. *See Snajder v. INS*, 29 F.3d 1203 (7th Cir. 1994).

The next question is whether the amendment applies to aliens convicted of any offense which would render them subject to deportation proceedings on charges referenced in section 212(c), as amended, and ineligible to apply for or be granted a waiver under that section. In the first published opinion on a provision of the AEDPA, the District Court of Massachusetts, construing section 440(c), posited that it was untenable that Congress could have intended that the terms of the provision apply other than to persons convicted on or after the April 24, 1996 effective date. *Demelo v. Cobb*, 936 F. Supp. 30 (D. Mass. 1996). Section 440(c) refers to custody requirements applicable to the exact same categories of aliens affected by the operation of section 440(d).

One difference between the language in section 440(c) and that in section 440(d) is that the plain language of section 440(c) amends section 242(a)(2) of the Act, which mandates the Attorney General to take into custody any alien "*convicted of* [the same offenses specified in amended section 212(c)]. . . upon release of the alien from incarceration." (Emphasis added.) By contrast, the language of section 440(d) amends section 212(c) to read that the provision "shall not apply to an alien who *is deportable* by reason of having committed an offense." (Emphasis added.)

As the majority states, silence cannot reasonably be interpreted as supporting a "settled expectation" of being able to engage in criminal activity without consequences. However, I part ways with the majority when they declare that individuals may not have "settled expectations" with regard to an opportunity to seek a section 212(c) waiver that affects a plea of guilty or other trial or appellate choices.

## III. *LANDGRAF* PRINCIPLES AND MANIFEST INJUSTICE

In the absence of specific language, the reach of the statute depends upon settled expectations. This doctrine is different from, but enhanced by, that of "manifest injustice."

The human consequences of the AEDPA which are implicated by the legal question before us are compelling. I believe this is especially important to note in light of the fact that our decision today denies the requested relief from deportation. Waivers under section 212(c) are not easily obtained; to the contrary, they are perhaps the most difficult and hard won of any forms of discretionary relief over which we exercise our jurisdiction. At stake is an alien's ability to remain in this country as a permanent resident, which is determined by balancing the good of society as a whole against the individual social and humane considerations that may pertain to any one case. *Matter of Marin*, 16 I&N Dec. 581 (BIA 1978).

Such waiver applications are individual and fact bound, and they are properly left to the exercise of discretion by Immigration Judges in individual cases, subject to the de novo review authority of this Board. While applicants for section 212(c) waivers share the adverse factor of having been convicted of a criminal or other immigration offense or offenses which renders them subject to deportation, they are as individual as humans can be and as human experience allows.

Applicants for waivers under section 212(c), until now, have included persons convicted of a single, possibly victimless or nonviolent crime or crimes over a discrete period of their stay in the United States, who have acknowledged their wrongdoing and changed their behavior. They include individuals who came to this country with their families as infants; adults who have neither spoken their native language nor been in their native country since childhood; fathers, mothers, and single parents of United States citizen children; businessmen and women who employ United States citizen workers in legitimate occupations; caretakers of elderly United States citizen parents; victims of domestic violence; and refugees. While they are not free of responsibility for their mistakes, they have paid, often dearly, for their transgressions in the criminal justice system, and they cannot all be said to unilaterally present a menace or threat to our society such that deportation is warranted.

I find compelling policy and practical reasons to go beyond such a limited interpretation as the one the majority proposes in this case. All of these people, and no doubt many others, had settled expectations to which they conformed their conduct. *Landgraf v. USA Film Products, supra*, at 265, instructs that those "settled expectations should not be lightly disrupted." "Retroactive application of laws is undesirable where advance notice of the change in the law would motivate a change in an individual's behavior or conduct." *Griffon v. United States Dept. of Health and Human Services*, 802 F.2d 146, 153 (5th Cir. 1986) (citing *Alexander v. Robinson*, 756 F.2d 1153 (5th Cir. 1985)).

Statutes may not be applied retroactively where doing so would result in manifest injustice to those affected. *Bradley v. Richmond School Board*, 416 U.S. 696 (1974). Here, manifest injustice would result to a significant

number of legal residents, because, while otherwise eligible, their right to apply for a section 212(c) waiver will have been infringed. Moreover, I note the inevitable disparity in treatment accorded different individuals that would result, because otherwise eligible legal residents requiring a waiver have no control over when proceedings are commenced or how quickly or in what order hearings and appeals are set or adjudicated. *See Dion v. Secretary of Health and Human Services*, 823 F.2d 669, 672 (1st Cir. 1987) (finding a retroactive application inappropriate where a disparity among applicants would result).

Further, although no legal resident has the absolute right to be granted section 212(c) relief, eligible residents do have a vested right to apply and be considered for such relief. *See, e.g., Rabiu v. INS*, 41 F.3d 879 (2d Cir. 1994); *Snajder v. INS, supra*, at 1207-08; *Batanic v. INS*, 12 F.3d 662, 667 (7th Cir. 1993). For example, a respondent's counsel might have been ineffective in failing to file a section 212(c) application on behalf of an otherwise eligible respondent. *Rabiu v. INS, supra*. The Service may have violated a regulation denying the respondent the right to counsel. *Snajder v. INS, supra; Batanic v. INS, supra.* The Immigration Judge might have wrongfully denied the respondent's motion for a change in venue that prejudiced his or her rights to a fair hearing. *Campos v. Nail*, 43 F.3d 1285 (9th Cir. 1994). The Immigration Judge might have failed to notify the respondent of relief for which he or she was apparently eligible. *Bui v. INS*, 76 F.3d 268 (9th Cir. 1996).

In any of these cases, I believe due process and fundamental fairness would dictate that we accept the case for consideration of section 212(c) relief, nunc pro tunc. Even while acknowledging the absence of statutory authority to do so, this Board has long granted nunc pro tunc relief to cure various defects in proceedings, if such treatment would dispose of a case. *Matter of Garcia*, 21 I&N Dec. 254 (BIA 1996); *see also Matter of Lok*, 18 I&N Dec. 101, 107 (BIA 1981), *aff'd*, 681 F.2d 107 (2d Cir. 1982).

## IV. CONCLUSION

I would find that section 440(d) of the AEDPA operates retroactively if applied not only to pending section 212(c) applications, but to other prior events. It would attach a new legal consequence to both a pre-amendment charge or finding of deportability under most of the provisions found at section 241(a)(2) of the Act. Prior to the amendment, a person entering into plea agreements or found deportable under those sections who were otherwise eligible could rely upon an opportunity to present evidence of social and humane considerations to countervail evidence of their undesirability as a permanent resident in order to demonstrate that the granting of section 212(c) relief appeared to be in the best interest of the United States. *Matter of Marin, supra*, at 584. To upset those settled expectations by retroactively applying section 440(d) of the AEDPA, without the express directive of Congress

requiring such an application, attaches a new legal consequence to conduct and events already completed by April 24, 1996. It would require us to disregard the concerns articulated by the Supreme Court in *Landgraf v. USI Film Products, supra*, and, in my view, would contravene both practical considerations and fundamental fairness.

*DISSENTING OPINION:* Fred W. Vacca, Board Member, in which Mary Maguire Dunne, Vice Chairman, Gerald S. Hurwitz, Lauri S. Filppu, and Patricia A. Cole, Board Members, joined.

I respectfully dissent.

As stated by the majority, the issue before us is to determine the effective date of section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, 1277 (enacted Apr. 24, 1996) ("AEDPA"), and if effective on enactment, to decide which aliens who were eligible for relief under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1994), are affected by the amendment. I agree with the majority's finding that general principles of statutory construction lead directly to the conclusion that the amendment took effect on the date of enactment, absent the inclusion of an alternative effective date. Therefore section 440(d) of the AEDPA applies immediately to aliens in proceedings. *See Matter of U-M-*, 20 I&N Dec. 327, 332 (BIA 1991), *aff'd*, 989 F.2d 1085 (9th Cir. 1993).

However, I part company with the remainder of the analysis employed by the majority with respect to the applicability of section 440(d) to pending applications for section 212(c) relief. I do not view the fact that Congress specifically barred pending applications for relief by alien terrorists, as set forth in section 413(g) of the AEDPA, 110 Stat. at 1269-70, to in any way dictate or even guide us in determining whether section 440(d) applies to pending section 212(c) applications. For comparison purposes, I cannot determine the relevant effective date from looking at the four corners of the statute to the extent that Congress employed a wide variety of effective dates throughout the AEDPA, including prospective dates. I conclude that we are compelled to apply the provisions of section 440(d) to all pending section 212(c) applications.

This Board has consistently held that an application for relief from deportation is an ongoing application. *Matter of U-M-, supra*, at 332. The law that applies to the application is the law that exists at the time the final administrative decision is made. *Ziffrin v. United States*, 318 U.S. 73 (1943); *Matter of U-M-, supra*. A final administrative decision is made when the Board renders its decision in a case on appeal or certification, or where no appeal is taken, the right to appeal is waived, or the time allotted for appeal has expired. *See Matter of Lok*, 18 I&N Dec. 101 (BIA 1981), *aff'd*, 681 F.2d 107 (2d Cir. 1982); 8 C.F.R. §§ 3.1(d)(2), 3.39 (1995).

This Board has also held that an application for section 212(c) relief filed in the context of deportation proceedings is equivalent to one made at the time an alien physically seeks admission into the United States. *Matter of A-A-*, 20 I&N Dec. 492, 502 n.22 (BIA 1992). Thus, in addition to qualifying as a person whose ongoing application for relief is subject to the existing law while under administrative review, the section 212(c) applicant also stands as an individual seeking entry to the United States, and his admissibility is determined on the basis of the facts and the law that exist at the time the application is finally considered. *Matter of Alarcon*, 20 I&N Dec. 557 (BIA 1992).

Furthermore, like the majority, I find additional support for my position in *Landgraf v. USI Film Products,* 511 U.S. 244 (1994). In *Landgraf* the Supreme Court stated:

> Even absent specific legislative authorization, application of new statutes passed after the events in suit is unquestionably proper in many situations. When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive.

*Id*. at 1501.

Prospective relief has been defined by the Supreme Court as relief that operates in futuro, such as injunctive relief. *See American Steel Foundaries v. Tri-City Central Trades Council*, 257 U.S. 184 (1921). This is in contrast to relief that operates "retroactively," such as damages and restitution. *See Hutto v. Finney*, 437 U.S. 678, 695 n. 24 (1978).

The Supreme Court has specifically held that statutory provisions that alter or affect forms of prospective relief are to be given effect upon the effective date of the legislation and should be applied to pending suits. *American Steel Foundries v. Tri-City Central Trades Council, supra,* at 201; *Duplex Printing Press Co. v. Deering,* 254 U.S. 443, 464 (1921); *see also Hall v. Beals,* 396 U.S. 45 (1969). The Court has further held that parties to an action do not have vested rights to prior judgments conferring forms of prospective relief while their cases remain subject to appellate review. *See American Steel Foundries v. Tri-City Central Trades Council, supra; Duplex Co. v. Deering, supra; see also Raferty V. Smith Bell & Co.*, 257 U.S. 226 (1921). Therefore, the ultimate right to prospective relief must be determined at the time of final administrative or judicial review.

Like injunctive relief, relief from deportation under section 212(c) of the Act is prospective in nature. *See Matter of K-L-*, 20 I&N Dec. 654, 658 (BIA 1993), *aff'd, Lee v. INS*, 12 F.3d 1102 (8th Cir. 1993) (referring to section 212(c) relief as prospective). Under the Immigration and Nationality Act, an alien's right to benefit from a waiver under section 212(c) can only be determined at the time of a hearing and upon a finding of excludability or deportability. Relief under section 212(c) therefore operates in futuro and does not nullify the fact that the alien, prior to applying for the waiver, was either excludable or deportable. Convictions alleged to be grounds for excludability or deportability do not disappear from an alien's record for

immigration purposes upon a grant of relief under section 212(c). *Matter of Balderas*, 20 I&N Dec. 389 (BIA 1991). Hence, section 440(d) of the AEDPA amends a prospective form of relief and accordingly should be applied to all cases before this Board that remain subject to our appellate review. *See Landgraf v. USI Film Products, supra; American Steel Foundaries v. Tri-City Central Trades Council, supra.*

In light of the above case law, I am hard pressed to identify a basis for not applying section 440(d) of the AEDPA to all section 212(c) applications that are pending adjudication or review. The weight of authority clearly requires the Board to apply the new law, as the law was changed before a final administrative decision had been rendered. Furthermore, applying the amended section 212(c) provisions to pending applications does not offend any of the concerns underlying the retroactive operation of new statutes. *Matter of Gomez-Giraldo,* 20 I&N Dec. 957, 963 (BIA 1995).

Due to the nature of an application for a waiver under section 212(c), which is a continuous application until the conclusion of final administrative action, the effect of applying section 440(d) to pending applications is not retroactive. The only expectation an alien seeking to apply for section 212(c) waiver can rely on is that his application will be considered according to the law and facts as they stand at the time of final administrative review. In this context, it has long been true that an alien whose circumstances improve through the acquisition of an additional equity can move the Board to remand a pending matter for reconsideration of the discretionary aspect of his section 212(c) application in light of the new evidence. *Matter of Coelho*, 20 I&N Dec. 464 (BIA 1992).

Finally, I am concerned with the majority's preferred choice of the date of filing the section 212(c) application as being determinative of which applications can be evaluated under the pre-AEDPA statutory provisions. This effective date is not contained elsewhere in the AEDPA. Moreover, there are numerous other dates that could be selected, e.g., the date the crime giving rise to the ground of deportability occurred, the date of issuance of the Order to Show Cause, the date on which a finding of deportability was rendered, and the date of filing the application.

The majority claims support for its selected effective date in the Supreme Court's analysis in *Landgraf v. USI Film Products, supra*. However, under *Landgraf*, we consider whether the new statute "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed" in determining whether a statute would have retroactive effect. *Id*. at 280. These concerns of retroactivity, as enunciated in *Landgraf*, apply to the relevant past act. For section 440(d) purposes, this act occurs when the alien committed the crime that underlies the charge of deportability.

The majority appears to neglect this aspect of the retroactivity issue in its determination that applications filed by the date of enactment of the AEDPA

are to be adjudicated under the former section 212(c) provisions so as not to unfairly disrupt the "unique expectations" of aliens at the time of filing. In my opinion, the expectations that an alien has at the time of filing an application under section 212(c) of the Act are largely irrelevant in determining whether section 440(d) of the AEDPA operates retroactively. Section 440(d) does not alter the rights an alien had at the time he committed the crime. Upon the commission of a criminal act that triggers deportability, an alien now stands, as he would have stood before, facing the prospect of criminal liability, as well as deportation from the United States. *See Scheidemann v. INS,* 83 F.3d 1517 (3d Cir. 1996).

In the face of congressional silence as to the effective date of section 440(d), the judicial default rules direct us to apply the law as of the date of enactment absent retroactive effect, which is not implicated here. The majority offers no persuasive analysis to support its conclusion that the traditional default rules do not govern here. Accordingly, I dissent.

## BEFORE THE ATTORNEY GENERAL
(February 21, 1997)

At the request of the Commissioner of Immigration and Naturalization, the Board of Immigration Appeals ("BIA") referred its decision in this matter pursuant to 8 C.F.R. § 3.1(h)(iii). Respondent Soriano, a native and citizen of the Dominican Republic, was admitted to the United States in 1985 as a lawful permanent resident alien. In 1992, he was convicted under New York law of the offense of an attempted sale of a controlled substance. Based on that conviction, the Immigration and Naturalization Service ("INS") instituted deportation proceedings against him in 1994.

In 1995, Respondent sought the relief of waiver of inadmissibility under section 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c). Section 212(c) grants the Attorney General discretionary authority to admit otherwise excludable permanent resident aliens. Although the statute expressly authorizes only a waiver of exclusion, courts have interpreted it to authorize relief in deportation proceedings as well. *See Francis v. INS*, 532 F.2d 268, 273 (2d Cir. 1976); *De Osorio v. INS*, 10 F.3d 1034, 1039 (4th Cir. 1993). The Immigration Judge found that the respondent was eligible for that relief, but, in the exercise of discretion, denied his application. *See Matter of Soriano*, File No. A39 186 067 (Executive Office for Immigration Review ("EOIR"), Office of the Immigration Judge, Oct. 12, 1995). Respondent appealed from that decision on October 23, 1995.

On April 24, 1996, while Respondent's appeal was pending, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"). Section 440(d) of AEDPA amended INA § 212(c). The amendment provides in relevant part that section

212(c) relief shall not be available to aliens who are deportable by reason of having committed certain specified criminal offenses. Respondent's offense is among those specified.[1] Thus, a threshold issue on appeal was whether the amendment to section 212(c) applied to foreclose Respondent's application for relief from deportation.[2]

The BIA was unanimous in concluding that AEDPA § 440(d) was effective immediately upon enactment on April 24, 1996. The BIA was divided, however, as to whether AEDPA § 440(d) applied to applications for section 212(c) relief that were pending on the effective date of AEDPA. Six members of the BIA concluded that Congress did not intend that aliens who had applications pending on April 24, 1996, should be barred from seeking that relief. Accordingly, they found that Respondent continued to be eligible for waiver of inadmissibility.[3] Five members of the BIA dissented. They would have held that section 440(d) did apply to pending applications for section 212(c) relief. One member of the BIA concurred in part and dissented in part. That member agreed with the majority that AEDPA § 440(d) should not be applied to pending section 212(c) applications, but would also have declined to apply it to other cases, such as those of permanent resident aliens subject to an Order to Show Cause.

For the reasons stated below, I conclude that the amendment to INA § 212(c) made by AEDPA § 440(d) applies to proceedings such as Respondent's, in which an application for relief under section 212(c) was pending when AEDPA was signed into law.[4]

---

[1] The amendment provides in relevant part that section 212(c) relief shall not be available to an alien who "is deportable by reason of having committed any criminal offense covered in [INA] section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 241(a)(2)(A)(i)." 110 Stat. at 1277, as amended by Section 306(d) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Div. C., Department of Defense Appropriations Act, 1997, Pub. L. No. 104-208, 1996 U.S.C.C.A.N. Vol. 9B (110 Stat.) 1672. Respondent's offense is covered by sections 241(a)(2)(A)(iii) and (B) of the INA. *See* 8 U.S.C. § 1251.

[2] It is important to note as a threshold matter that deportation proceedings are civil actions, and, thus, the constitutional bars to retroactive application of penal legislation do not apply. *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984); *Harisiades v. Shaughnessy*, 342 U.S. 580, 594-95 (1952). Moreover, it is well settled that Congress may legislate to alter the immigration consequences of past criminal convictions or acts. *Lehman v. Carson*, 353 U.S. 685, 690 (1957); *Mulcahey v. Catalanotte*, 353 U.S. 692, 694 (1957).

[3] The majority agreed with the Immigration Judge's conclusions that Respondent's attempted criminal sale of cocaine, together with his three other drug-related felonies, required a demonstration of outstanding equities before he could receive a waiver of inadmissibility, and that Respondent had not made such a demonstration.

[4] By Order dated September 12, 1996, I granted the request for review and vacated the opinion of the BIA in Matter of Bartolome Jhonny Soriano (A39 186 067).

### *Analysis*

In *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), the Supreme Court sought to "reconcile two seemingly contradictory statements found in [the Court's] decisions concerning the effect of intervening changes in the law": that "'a court is to apply the law in effect at the time it renders its decision,'" and that "'[r]etroactivity is not favored in the law.'" *Id.* at 263-64 (citations omitted).

The Court set forth the method for analyzing the temporal reach of a statute:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Id*. at 280.

In the present case, nothing in the language of the newly enacted statute, AEDPA § 440(d), specifies either that it is to be applied in pending deportation proceedings, or that it is not to be. Thus, the next task is to determine whether the statute would be given retroactive effect if applied in pending deportation proceedings. In this regard, the Court observed that "[w]hile statutory retroactivity has long been disfavored, deciding when a statute operates 'retroactively' is not always a simple or mechanical task." *Id*. at 268. A statute does not operate retroactively "merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." *Id*. at 269-70 (citation and footnote omitted).

Of particular relevance here, the Court suggested that changes in the law affecting prospective relief, as well as those affecting jurisdiction and procedure, are generally not to be considered "retroactive." Specifically, the Court said:

> Even absent specific legislative authorization, application of new statutes passed after the events in suit is unquestionably proper in many situations. When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive. Thus, in *American Steel Foundries v. Tri-City Central Trades Council*, 257 U.S. 184 (1921), we held that § 20 of the Clayton Act, enacted while the case was pending on appeal, governed the propriety of injunctive relief against labor picketing. In remanding the suit for application of the intervening statute, we observed that "relief by injunction operates *in futuro*," and that the plaintiff had no "vested right" in the decree entered by the trial court.

*Id*. at 273-74.

Similarly, the three separately concurring Justices (Scalia, J., joined by Kennedy and Thomas, JJ., concurring in the judgment), emphasized that intervening law was typically applied to pending applications for prospective relief:

> Courts traditionally withhold requested injunctions that are not authorized by then-current law, even if they were authorized at the time suit commenced and at the time the primary conduct sought to be enjoined was first engaged in. The reason, which has nothing to do with whether it is possible to have a vested right to prospective relief, is that "[o]bviously, this form of relief operated only *in futuro*." Since the purpose of prospective relief is to affect the future rather than to remedy the past, the relevant time for judging its retroactivity is the very moment at which it is ordered.

*Id.* at 293 (citations omitted).

Both the majority and concurring Justices identified another set of intervening statutes—those that confer or eliminate jurisdiction—that do not operate retroactively merely because they are applied to conduct arising before the statute's enactment. Justice Scalia explained the Court's "consistent practice of giving immediate effect to statutes that alter a court's jurisdiction . . . by the fact that the purpose of provisions conferring or eliminating jurisdiction is to permit or forbid the exercise of judicial power—so that the relevant event for retroactivity purposes is the moment at which that power is sought to be exercised." *Landgraf*, 511 U.S. 286, 292-93 (Scalia, J. concurring).[5]

In summary, under *Landgraf*, a new statute does not have retroactive effect if it does not impair rights a party possessed when he or she acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. More specifically, an intervening statute that either alters jurisdiction or affects prospective injunctive relief generally does not raise retroactivity concerns, and, thus, presumptively is to be applied in pending cases. As discussed below, the application of AEDPA § 440(d) to pending applications for section 212(c) relief does not impair a right, increase a liability, or impose new duties on criminal aliens. The consequences of Respondent's conduct remain the same before and after the passage of AEDPA: criminal sanctions and deportation. AEDPA § 404(d) is best understood as Congress's withdrawal of the Attorney General's authority to grant prospective relief. Thus, the statute alters both jurisdiction and the

---

[5] The single dissenting Justice in *Landgraf* was of the opinion that the presumption against retroactive legislation, "which serves to protect settled expectations," and which "is grounded in a respect for vested rights," "need not be applied to remedial legislation . . . that does not proscribe any conduct that was previously legal." *Id.* at 296-97 (Blackmun, J., dissenting) (citing *Sampeyreac v. United States*, 32 U.S. (7 Pet.) 222, 238 (1833) ("Almost every law, by providing a new remedy, affects and operates upon causes of action existing at the time the law is passed") and *Hastings v. Earth Satellite Corp.*, 628 F.2d 85, 93 (D.C. Cir.) ("Modification of remedy merely adjusts the extent, or method of enforcement, of liability in instances in which the possibility of liability previously was known."), *cert. denied*, 449 U.S. 905 (1980)).

availability of future relief, and should be applied to pending applications for relief.[6]

The relief sought in a section 212(c) application, waiver of inadmissibility, is prospective in nature. A successful applicant for relief under section 212(c) will not, as a matter of the sovereign's discretion, be deported from the country, even though his or her past criminal convictions would otherwise lead to deportation. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984) ("The deportation hearing looks prospectively to the respondent's right to remain in this country in the future. Past conduct is relevant only insofar as it may shed light on the respondent's right to remain."); *De Osorio v. INS*, 10 F.3d at 1042 (holding that an amendment barring applications for waivers of deportations filed after the effective date of the amendment to 212(c) is not made retroactive merely because it applies to convictions for aggravated felonies before that time: "The past aggravated felony conviction is only the prerequisite for the prospective denial of discretionary relief. . . . Congress did not attach additional consequences, but merely withdrew a previously available form of discretionary relief.").

Moreover, Congress's modification of section 212(c) operates to eliminate the discretionary authority of the Attorney General to grant relief in certain cases, and, thus, its effect is to remove jurisdiction. As the Solicitor General argued in the brief of the United States to the Supreme Court in *INS v. Elramly*, 73 F.3d 220 (9th Cir. 1995), *cert. granted*, 516 U.S. 1170, and *vacated*, 518 U.S. 1051 (1996), a case raising the issue whether AEDPA divested the Attorney General of authority to grant section 212(c) relief in pending cases, "[j]ust as new 'jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties,'' *Landgraf*, 511 U.S. at 274, section 212(c) speaks to the *power* of the Attorney General to waive deportation, not to any right of an alien to such relief." Supplemental Brief for the Petitioner at 18. The majority opinion in *Landgraf* explains the practice of applying new jurisdictional statutes to pending cases by the fact that "a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to hear the case.'" *Id.* at 274 (quoting

---

[6] One formulation articulated in *Landgraf* for determining whether a statute operates retroactively—"whether [it] attaches new legal consequences to events completed before its enactment"—could be interpreted as compelling the conclusion that AEDPA § 404(d) should not be applied to pending applications for section 212(c) relief. *Id.* at 269-70. Because the statute eliminates eligibility for a previously available form of relief from the immigration consequences of a prior criminal conviction, it could be argued that it attaches new legal consequence to a prior event. Elimination of a form of relief in this context, however, is not the same as the attachment of new legal consequences in the sense that the Court meant in *Landgraf*. If it were, most cases in the three categories that the Court identified as not constituting retroactive application when applied to past events—statutes that alter jurisdiction, procedural rules, and statutes affecting the availability of prospective injunctive relief—would also have to be understood as attaching new legal consequences to prior events and, hence, constituting retroactive application.

*Hallowell v. Commons,* 239 U.S. 506, 508 (1916)). Here, in contrast to the cases cited by the Court, there is no alternative tribunal to which the criminal alien may petition. Even assuming that the lack of an alternative tribunal would be relevant to retroactivity analysis where a substantive right is at stake, eligibility for a congressionally created form of purely discretionary relief from the immigration consequences of a prior criminal conviction cannot properly be characterized as a substantive right.[7]

The Third Circuit's discussion of the application of an earlier amendment to section 212(c) to make an applicant ineligible for relief based on a prior criminal conviction applies equally here:

> In this case, the consequences of petitioner's criminal conduct were clear at the time of that conduct and they remain unchanged today. He was subject to possible criminal sanctions and deportation. The only relevant change in the law relates to the permissible scope of the Attorney General's discretion to grant relief from one of those consequences. Like statutes altering the standards for injunctive relief, this change has only a prospective impact. It is not designed to remedy the past but only to affect petitioner's future status with respect to the legality of his presence in the United States. Like statutes constricting the jurisdiction of a judicial body, these changes speak only to the power of a public agency. . . . Given the facts that petitioner's pre-1987 conduct clearly subjected him to deportation as well as criminal sanctions, and that § 212(c), as it then existed, offered relief from the former only at the unfettered discretion of the Attorney General, petitioner does not, and could not, contend that his conduct was undertaken in reliance on the then current version of § 212(c).

*Scheidemann v. INS*, 83 F.3d 1517, 1523 (3rd Cir. 1996).

The Seventh Circuit has expressed a contrary view in *Reyes- Hernandez v. INS*, 89 F.3d 490 (7th Cir. 1996), at least with respect to a narrow category of cases. In that case the petitioner had conceded deportability before the enactment of AEDPA, when he was still eligible for section 212(c) relief. The court speculated that had the petitioner known that this relief would no longer be available to him, he might have contested deportability.

Considering the fell consequences of deportation, especially in cases of exceptional hardship, which are precisely the cases in which an appeal to section 212(c) would have a chance of success, we think it unlikely that Congress intended to mousetrap aliens into conceding deportability by holding out to them the hope of relief under section 212(c) only to dash that hope after they had conceded deportability. No such ignoble intention appears in the statute. Its absence is determinative under *Landgraf* because to make the concession of deportability a bar to relief under section 212(c) would be to attach

---

[7] The concurring opinion further notes that while there may sometimes be an alternative forum, there is not always one, and even where there is, it may deny relief for some collateral reason such as a statute of limitations bar. "Our jurisdiction cases are explained, I think, by the fact that the purpose of provisions conferring or eliminating jurisdiction is to permit or forbid the exercise of judicial power—so that the relevant event for retroactivity purposes is the moment at which that power is sought to be exercised." *Landgraf*, 511 U.S. at 293 (Scalia, J. concurring).

a new legal consequence to the concession, an event that occurred before the new law came into existence.

*Id*. at 492-93. The court held that section 440(d) of AEDPA does not apply to cases in which deportability was conceded before AEDPA became law, "provided that the applicant for discretionary relief would have had at least a colorable defense to deportability; for if not, he lost nothing by conceding deportability." *Id*. at 493.[8]

Amici curiae in the current case also emphasized the reliance aliens may have placed on the availability of section 212(c) relief. Amici argue that aliens may rely on the possibility of obtaining section 212(c) relief not only when deciding whether to contest deportability, but also when deciding whether to litigate their criminal liability or enter into a plea agreement. It is true that the majority opinion in *Landgraf* notes that "familiar considerations of fair notice, reasonable reliance, and settled expectations" are factors offering "sound guidance" in "hard cases." *Landgraf*, 511 U.S. at 270. However, the Court states expressly that a statute does not operate retroactively merely because it "upsets expectations based in prior law." *Landgraf*, 511 U.S. at 270.

In any event, it is difficult to see how the possibility of obtaining section 212(c) relief would affect an alien's decision whether to concede or contest deportability. First, the criteria for determining whether someone is deportable as a criminal alien are specific and fixed, and the grounds for challenging deportability are quite narrow. *See Rabiu v. INS,* 41 F.3d 879, 881 (2d Cir. 1994) (record of conviction sufficient to overcome alien's challenge to deportability); *Ortega de Robles v. INS*, 58 F.3d 1355, 1358 (9th Cir. 1995) (criminal convictions may not be collaterally challenged in deportation proceeding as ground for contesting deportability). Second, an alien need not choose between contesting deportability and seeking section 212(c) relief; an alien may pursue both.

It seems more plausible that an alien may enter a plea bargain hoping to obtain relief from deportation, but even so, the alien could not have reasonably relied upon the availability of that relief. For the past forty years, the law has been settled that Congress may legislate to alter the immigration consequences of past criminal convictions or acts. Moreover, as the Supreme Court recently unanimously reaffirmed in the context of analyzing a similar provision conferring discretionary authority upon the Attorney General, "suspension of deportation [is]. . . 'an act of grace' which is accorded pursuant to her 'unfettered discretion' and is similar to 'a judge's power to suspend the execution of a sentence, or the President's to pardon a convict.'" *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 28-29 (1996) (citations omitted). Therefore, a

---

[8] The Seventh Circuit has confirmed that *Reyes-Hernandez* applies only in cases where the petitioner conceded deportability and had a colorable defense to deportability. *Arevalo-Lopez v. INS*, 104 F.3d 100, 101 (7th Cir., 1997).

criminal alien could not reasonably rely on the availability of section 212(c) relief in determining whether to plead guilty to a criminal offense or in determining whether to concede deportability.

Accordingly, the application of AEDPA § 440(d) to section 212(c) applications pending before the EOIR would not be retroactive. However, to eliminate even the remote possibility that an alien who had a colorable defense to deportability may have conceded deportability in reliance on the availability of section 212(c) relief, I direct the EOIR to reopen cases upon petition by an alien who conceded deportability before the effective date of AEDPA for the limited purpose of permitting him or her to contest deportability.

## Conclusion

For the foregoing reasons, AEDPA § 440(d) should be applied to INA § 212(c) cases pending before the EOIR on the effective date of AEDPA. EOIR shall reopen cases upon petition by an alien who conceded deportability before April 24, 1996, the effective date of AEDPA, for the limited purpose of permitting the alien to contest deportability.