# In re Carlos CAZARES-Alvarez, Respondent

File A92 166 321 - Los Angeles

*Decided by Board January 3, 1996*
*Decided by Attorney General June 29, 1997*
*Decided by Board on remand October 8, 1997*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Following the amendment of section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1994), by section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, 1277, and the Attorney General's ruling in *Matter of Soriano*, 21 I&N Dec. 516 (BIA 1996; A.G. 1997), an alien who is deportable as an aggravated felon is not eligible for section 212(c) relief.

FOR RESPONDENT: Nadine K. Wettstein, Esquire, Tucson, Arizona

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: Stewart Deutsch, Appellate Counsel

## BEFORE THE BOARD
(January 3, 1996)

BEFORE: Board En Banc: SCHMIDT, Chairman; VACCA, HOLMES, HURWITZ, COLE, MATHON, and GUENDELSBERGER, Board Members. Concurring Opinions: VILLAGELIU, Board Member; ROSENBERG, Board Member. Concurring and Dissenting Opinion: HEILMAN, Board Member, joined by DUNNE, Vice Chairman.

HOLMES, Board Member:

In a decision dated October 20, 1994, an Immigration Judge found the respondent deportable under section 241(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2)(A)(iii) (1994), as an alien convicted of an aggravated felony. The Immigration Judge also determined that the respondent was statutorily ineligible for relief under section 212(c) of the Act, 8 U.S.C. § 1182(c) (1994), and ordered him deported to Mexico. The respondent has appealed from that decision. The appeal will be sustained and the record will be remanded. Our decision will be referred to the Attorney General for review pursuant to 8 C.F.R. § 3.1(h)(1)(ii) (1995).

## I. FACTS

The respondent is a 38-year-old native and citizen of Mexico, who first entered the United States in 1970. He was granted temporary resident status on January 29, 1988, under the provisions of section 245A of the Act, 8 U.S.C. § 1255a (1988). On September 25, 1989, he adjusted his status under section 245A to that of a lawful permanent resident.

On May 11, 1993, the respondent was convicted of possession for sale of a controlled substance in the Superior Court of the State of California for the County of Tulare and was sentenced to a 2-year prison term. The Immigration and Naturalization Service thereafter charged the respondent with deportability under section 241(a)(2)(A)(iii) of the Act, as an alien convicted of an aggravated felony.

At proceedings held on October 20, 1994, the Immigration Judge found the respondent deportable as charged. The respondent requested the opportunity to apply for relief under section 212(c) of the Act. He argued that he was eligible for such relief because he had been admitted for permanent residence and had an unrelinquished lawful domicile of more than 7 years if one included his years of "lawful domicile" that preceded his attainment of lawful permanent resident status. However, relying on precedent decisions of the United States Court of Appeals for the Ninth Circuit and this Board, the Immigration Judge found the respondent ineligible for section 212(c) relief because he could not establish 7 years of lawful unrelinquished domicile *after* his admission for lawful permanent residence. *See Castillo-Felix v. INS*, 601 F.2d 459 (9th Cir. 1979); *Matter of Kim*, 17 I&N Dec. 144 (BIA 1979).

The respondent filed a timely appeal to this Board, challenging the Immigration Judge's finding that he was statutorily ineligible for section 212(c) relief. On appeal he argues that he has the requisite 7 years of "lawful unrelinquished domicile" to establish eligibility for a waiver because that phrase should not be interpreted to include only lawful domicile after admission for permanent residence.

At oral argument on June 7, 1995, the respondent further argued that the recent decision by the United States Court of Appeals for the Ninth Circuit in *Ortega de Robles v. INS*, 58 F.3d 1355 (9th Cir. 1995), is dispositive of the specific issue before us.

In *Ortega de Robles*, the Ninth Circuit concluded that a lawful permanent resident who gained such status under section 245A of the Act could include time spent as a lawful temporary resident to establish the requisite 7 years of lawful unrelinquished domicile for section 212(c) purposes.

The Service submits that, notwithstanding the Ninth Circuit's decision in *Ortega de Robles v. INS, supra*, the Board is bound by the provisions of 8 C.F.R. § 212.3(f)(2) (1995), which in relevant part specify that relief under section 212(c) shall be denied if an alien "has not maintained lawful permanent resident status in the United States for at least seven consecutive years

immediately preceding the filing of the application." The Service argues that the Board remains bound by the regulation rather than by the Ninth Circuit's decision in *Ortega de Robles* because the court did not address this regulation in its decision.

The Service also asks that the Board refrain from issuing a precedent decision on this issue until the Department of Justice conducts a review of the regulation and until a court of appeals has ruled on whether the regulation constitutes a proper interpretation of the law.

## II.  ISSUES

A.  Should the Board of Immigration Appeals refrain from issuing a decision in this case?

B.  Is the decision of the United States Court of Appeals for the Ninth Circuit in *Ortega de Robles v. INS, supra*, dispositive of the question of whether a lawful permanent resident who gained such status under section 245A of the Act can include time spent as a lawful temporary resident to establish the requisite 7 years of lawful unrelinquished domicile for section 212(c) purposes in cases arising within the jurisdiction of that circuit?

## III.  SERVICE REQUEST TO WITHHOLD ADJUDICATION

We deny the Service request to refrain from issuing a precedent decision on the issues raised in this case.  The Service asks that we withhold a decision on this issue until the Department has fully reviewed 8 C.F.R. § 212.3(f)(2) and until a court of appeals has ruled on the propriety of the statutory interpretation reflected in that regulation. We note preliminarily that the Service has also asked that we decline to follow the Ninth Circuit's decision in *Ortega de Robles v. INS, supra,* and instead apply the regulation. The Service's position is inconsistent, therefore, in that it asks us both to take a position, i.e., follow the regulation, yet not issue a precedent decision. Nevertheless, we have evaluated the merits of withholding our adjudication of this case.

Although the Service has asked us to refrain from issuing a decision, it has not indicated that it has refrained from acting on cases involving this issue while awaiting our decision.  The Service has not indicated that it has advised its trial attorneys to refrain from presenting arguments on this issue, or that orders of deportation are being stayed in cases which might be affected by the outcome of this case. Further, the Service has not indicated that the issue of the validity of the regulation is currently pending in the Ninth Circuit or that a decision has been made to pursue this issue before that court. The Service has also failed to provide any clear indication of how it would be prejudiced if we were to decide this case.

Conversely, the consequences of not issuing a decision are serious.  As the respondent's counsel indicated at oral argument, there are significant numbers of aliens, many of whom are detained at government expense, who are

affected by the determination of this issue. Moreover, the Board has a responsibility to provide guidance on interpretations of law in a timely fashion.

Issuance of a precedent decision should also ensure a uniform interpretation of the law, at least insofar as the *Ortega de Robles* decision affects cases arising within the jurisdiction of the Ninth Circuit. We note, for example, that although the Service's position before this Board is that the regulation controls notwithstanding *Ortega de Robles*, there are recently decided and pending cases before the Board in which Service trial attorneys have requested that cases be remanded to Immigration Judges for determinations of section 212(c) eligibility in light of *Ortega de Robles*. Apparently the parties to these proceedings, including Service trial attorneys, are operating under the presumption that *Ortega de Robles* is controlling in the Ninth Circuit. If that presumption is incorrect, guidance should come sooner rather than later. Failure to address this issue would not maintain a clear status quo; rather, in effect, it would amount to a decision in favor of uncertainty and inconsistency.

For these reasons, we deny the Service's request to refrain from issuing a decision in this case, and we will evaluate the case on its merits.

## IV. ELIGIBILITY FOR SECTION 212(c) WAIVER

A waiver of inadmissibility under section 212(c) of the Act is generally available to aliens who have been lawfully admitted for permanent residence, who have temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of 7 consecutive years in the United States. This form of relief is also available to lawful permanent residents, such as the respondent, who have not departed the United States and who are in deportation proceedings. *See Tapia-Acuna v. INS*, 640 F.2d 223 (9th Cir. 1981); *see also Francis v. INS*, 532 F.2d 268 (2d Cir. 1976); *Matter of Silva*, 16 I&N Dec. 26 (BIA 1976). Thus, eligibility under section 212(c) of the Act requires that an alien (1) be lawfully admitted for permanent residence and (2) have 7 consecutive years of lawful unrelinquished domicile.

The respondent became a lawful permanent resident on September 25, 1989, and thus satisfies the first requirement. Only the second requirement remains in issue. The Board long ago held that the phrase "lawful unrelinquished domicile" in section 212(c) meant that the alien must have maintained a domicile in the United States for 7 consecutive years after lawful admission for permanent residence. *See Matter of S-*, 5 I&N Dec. 116 (BIA 1953); *see also Matter of Newton*, 17 I&N Dec. 133 (BIA 1979), and the cases cited therein. The Ninth Circuit also held in *Castillo-Felix v. INS, supra*, that for 212(c) purposes, lawful domicile begins to accrue when an alien acquires lawful permanent resident status. Thus, the Immigration Judge correctly ruled in October 1994 that, under then controlling precedent, the respondent could not demonstrate his eligibility for relief under section

212(c). However, the Ninth Circuit has now addressed the specific issue raised by the respondent on appeal and in effect has modified its decision in *Castillo-Felix*, at least as to aliens who acquired lawful temporary status under section 245A of the Act.

## A. Application of Recent Ninth Circuit Precedent

In evaluating whether an alien has established 7 years of lawful unrelinquished domicile for section 212(c) purposes, the Ninth Circuit has now held that the time an alien spends in the United States as a lawful temporary resident pursuant to section 245A of the Act can count towards the 7 years of lawful unrelinquished domicile required for section 212(c) eligibility. *Ortega de Robles v. INS, supra*. The court determined that *Castillo-Felix v. INS, supra*, was not controlling on this issue because the reasoning in that case had not contemplated "an amnesty program such as [section 245A of the Act]." The court found that the reasoning in *Castillo-Felix* in fact supported its conclusion that "a lawful permanent resident who gained such status under [section 245A] by first becoming a 'temporary' resident established 'lawful domicile' for purposes of section 212(c) as of the date of his or her application for amnesty (if a prima facie application was presented at that time)." *Ortega de Robles v. INS, supra*, at 1360-61.

The Board is bound by this holding in *Ortega de Robles v. INS, supra,* for cases arising within the jurisdiction of the Ninth Circuit. The Board has consistently followed a circuit court's precedent in cases arising within that circuit. *Matter of K-S-*, 20 I&N Dec. 715, 717-18 (BIA 1993); *Matter of Anselmo,* 20 I&N Dec. 25, 31-32 (BIA 1989); *Matter of Herrera*, 18 I&N Dec. 4, 5 (BIA 1981); *Matter of Patel*, 17 I&N Dec. 597, 601 (BIA 1980); *Matter of Bonette*, 17 I&N Dec. 587, 588 (BIA 1980); *Matter of Bowe,* 17 I&N Dec. 488, 493 (BIA 1980, 1981); *Matter of Kondo*, 17 I&N Dec. 330 (BIA 1980); *Matter of Cienfuegos*, 17 I&N Dec. 184, 186 (BIA 1979); *Matter of Lok*, 16 I&N Dec. 441, 442-43 (BIA 1978); *Matter of Gonzalez*, 16 I&N Dec. 134, 136 (BIA 1977).[1]

---

[1] We note that insofar as other circuit courts have decided the issue of whether temporary residence constitutes domicile for section 212(c) purposes, it is our view that those holdings are binding on cases arising within those circuits. For example, the Seventh Circuit has similarly concluded that lawful temporary resident status under section 245A of the Act constitutes "lawful domicile" for purposes of establishing eligibility for relief under section 212(c) of the Act. *See Avelar-Cruz v. INS*, 58 F.3d 338 (7th Cir. 1995); *Castellon-Contreras v. INS*, 45 F.3d 149 (7th Cir. 1995). Other circuits have not addressed this issue specifically. *See Hussein v. INS*, 61 F.3d 377 (5th Cir. 1995); *Graham v. INS*, 998 F.2d 194, 196 (3d Cir. 1993); *Melian v. INS,* 987 F.2d 1521 (11th Cir. 1993); *Anwo v. INS*, 607 F.2d 435, 437 (D.C. Cir. 1979). Although the Second Circuit has not specifically considered whether temporary resident status under section 245A constitutes lawful domicile for section 212(c) purposes, it held long ago that an alien's "lawful unrelinquished domicile" for section 212(c) purposes need not follow admission for permanent residence. *Lok v. INS*, 548 F.2d 37 (2d Cir. 1977). Conversely, the Fourth and the Tenth Circuits have upheld the determination that lawful domicile for section

Thus, we find that the holding of *Ortega de Robles v. INS* controls the issue before us. The respondent in this case, like the alien in *Ortega de Robles*, adjusted to lawful temporary resident status pursuant to the legalization provisions of the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359 (codified at section 245A of the Act) ("IRCA"). The respondent's case arises within the jurisdiction of the Ninth Circuit. Therefore, we will follow *Ortega de Robles* and include the time that the respondent spent in the United States as a temporary resident in evaluating whether the respondent has satisfied the 7-year lawful domicile requirement under section 212(c) of the Act.

We are not persuaded by the Service's argument that, despite the Ninth Circuit's specific holding in *Ortega de Robles v. INS*, we should decline to follow that decision because of the provisions of 8 C.F.R. § 212.3(f)(2). In this regard, we recognize that the Board and Immigration Judges (except as to the specific authority provided by statute) only have such authority as is created and delegated by the Attorney General. *See* section 103 of the Act, 8 U.S.C. § 1103 (1994); 28 U.S.C. §§ 503, 509, 510 (1994); *Matter of Anselmo, supra,* at 29-30 (BIA 1988); *Matter of Medina*, 19 I&N Dec. 734, 742, 746 (BIA 1988). Under section 103(a) of the Act, the Attorney General has the authority to issue regulations, and her determinations with respect to all questions of law are controlling. A regulation promulgated by the Attorney General has the force and effect of law as to this Board and Immigration Judges. *See* sections 103(a), 236(a), 242(b) of the Act, 8 U.S.C. §§ 1103(a), 1226(a), 1252(b) (1994); *Matter of Anselmo, supra*, at 29-30; *Matter of Torres,* 19 I&N Dec. 371, 375 (BIA 1986); *Matter of Valdovinos,* 18 I&N Dec. 343, 345 (BIA 1982); *Matter of Bilbao-Bastida*, 11 I&N Dec. 615, 617 (BIA 1966), *aff'd*, 409 F.2d 820 (9th Cir.), *cert. dismissed*, 396 U.S. 802 (1969); *Matter of Tzimas,* 10 I&N Dec. 101, 102 (BIA 1962); 8 C.F.R. § 3.0 (1995).

However, as noted above, we have historically followed a circuit court's precedent in cases originating in that circuit. And, we would not lightly decline to follow the holdings of a circuit court. *See NLRB v. Ashkenazy Prop. Management Corp.*, 817 F.2d 74 (9th Cir. 1987), *cert. denied*, 501 U.S. 1217 (1991); *Lopez v. Heckler*, 725 F.2d 1489 (9th Cir. 1984). Although we recognize that the Ninth Circuit did not specifically address the regulation in its decision in *Ortega de Robles v. INS, supra*, the court clearly held that temporary resident status acquired pursuant to the provisions of section 245A of the Act qualifies as lawful domicile for section 212(c) purposes. Moreover, the effect of the regulation was not raised before the court by the Government, and the Service does not argue that the relevant regulatory language represents anything other than a codification of prior Board precedent.

212(c) purposes only begins subsequent to attainment of lawful permanent resident status. *See Michelson v. INS*, 897 F.2d 465 (10th Cir. 1990); *Chiravacharadhikul v. INS*, 645 F.2d 248, 250-51 (4th Cir.), *cert. denied*, 454 U.S. 893 (1981).

While, in one instance, we declined to follow a circuit court's precedent in a subsequent case within the circuit, the factual circumstances of that case were unusual. *See Matter of Mangabat,* 14 I&N Dec. 75 (BIA 1972), *aff'd sub nom. Cabuco-Flores v. INS,* 477 F.2d 108 (9th Cir.), *cert. denied*, 414 U.S. 841 (1973). In that case, the Solicitor General had pursued the case to the Supreme Court, which had granted certiorari, but the case was terminated inconclusively when the alien left the United States during the appeal process. *Id.; see also Matter of Anselmo, supra*, at 31-32 (explaining the unusual circumstances that led to our decision in *Matter of Mangabat*). We are not faced with a similarly unusual situation in the case before us, particularly as the Service has now advised us both that the Attorney General has decided not to seek further review in *Ortega de Robles* and that "a 'Departmental Review' with a view to amendment of the regulation will be conducted."

Finally, we note that the Service has not provided any explicit authority for its argument that a preexisting regulation in effect at the time of a circuit court's decision controls despite the circuit court's specific contrary holding regarding a matter addressed in the regulation. The cases cited in the Service brief simply support the general rule that regulations have the force of law and that courts owe deference to agency regulations. These contentions are not in dispute.

Thus, we are unpersuaded by the Service's argument that we should not follow the Ninth Circuit's holding in *Ortega de Robles v. INS, supra*, regarding the specific section 212(c) eligibility issue before us today in this case that arises within the jurisdiction of that circuit. Accordingly, we find that this respondent's temporary resident status should be considered when evaluating whether he has established 7 years of lawful domicile for section 212(c) eligibility purposes.

## B. Evaluation of Beginning Date for Lawful Domicile

In order to determine whether the respondent has satisfied the requirement of 7 years of lawful unrelinquished domicile, one must determine the point at which lawful domicile is deemed to begin. The Ninth Circuit has resolved this issue. In *Ortega de Robles*, the court held that "an alien can establish lawful domicile for purposes of § 212(c) as of the date he or she applied for amnesty." *Ortega de Robles v. INS, supra*, at 1360, (citing with approval *Castellon-Contreras v. INS*, 45 F.3d 149, 154 & n.6 (7th Cir. 1995)); *see also Hussein v. INS*, 61 F.3d 377, 380-81 (5th Cir. 1995). An alien whose application for temporary resident status is approved under section 245A is adjusted to a lawful temporary resident as of the date indicated on the application fee receipt issued at the Service Legalization Office. 8 C.F.R. § 245a.2(s) (1995).[2]

---

[2] The date of adjustment to lawful temporary resident status also appears on the reverse side of the Alien Registration Receipt Card (Form I-551).

We are bound by the Ninth Circuit's determination that temporary residence begins on the date that the alien files his or her application for amnesty, and, thus, we need not discuss the merits of the respondent's arguments that lawful unrelinquished domicile begins any earlier than that date.[3] However, we agree that use of the date of filing of the application for legalization is logically consistent with the requirements of section 245A. Aliens applying for legalization pursuant to that provision are required to establish that they had resided in the United States in an unlawful status from before January 1, 1982, through the date of application. Section 245A of the Act. An alien cannot maintain both an unlawful status and still have *lawful* domicile, as required by section 212(c). Therefore, the earliest date on which an alien with temporary resident status pursuant to section 245A of the Act can have lawful domicile is the date on which he files his application for temporary residence.

The respondent indicates that he was granted temporary resident status on January 29, 1988. Thus, under the standard set out in *Ortega de Robles v. INS, supra,* he appears to have established his statutory eligibility for relief under section 212(c) of the Act.

## V. CONCLUSION

For the reasons discussed above, we conclude that in the Ninth Circuit, temporary residence acquired pursuant to section 245A of the Act can be counted towards the 7-year lawful domicile requirement of section 212(c). Accordingly, we will enter an order remanding this case to the Immigration Judge for a hearing on whether the respondent is eligible for section 212(c) relief in light of *Ortega de Robles v. INS, supra*, and whether he merits a favorable exercise of discretion for that relief. However, as this case raises a novel issue regarding the effect of an Attorney General regulation in the face of a circuit court decision that directly conflicts with the regulation without referencing it, we will refer this case to the Attorney General for review pursuant to the provisions of 8 C.F.R. § 3.1(h)(1)(ii).

**ORDER:**     The appeal is sustained and the record is remanded to the Office of the Immigration Judge.

**FURTHER ORDER:**     The decision in this case is referred to the Attorney General for review pursuant to the provisions of 8 C.F.R. § 3.1(h)(1)(ii).

---

[3] The respondent argues that because section 245A of the Act allows aliens with continuous illegal residence in the United States prior to 1982 to obtain lawful residence, the entire period of his residence in the United States (since 1970) was retroactively converted to lawful domicile at the time he adjusted to lawful permanent resident status. He also argues, in the alternative, that since section 245A grants an automatic stay of deportation from the date it took effect, November 6, 1986, his residence in the United States since that date should qualify as lawful domicile under section 212(c) of the Act.

Board Member Lauri S. Filppu did not participate in the decision in this case.

*CONCURRING OPINION:* Gustavo D. Villageliu, Board Member

I respectfully concur.

I concur in the majority's conclusion regarding eligibility for relief under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1994), in this case. However, I disagree with the language in section IV. A. of the decision regarding the binding effect of 8 C.F.R. § 212.3(f)(2) for the reasons that I have discussed in *Matter of Ponce De Leon*, 21 I&N Dec. 3261 (BIA 1995), the companion case addressing the availability of section 212(c) relief outside of the jurisdiction of the United States Court of Appeals for the Ninth Circuit. I would have used this opportunity to apply *Ortega de Robles v. INS*, 58 F.3d 1355 (9th Cir. 1995), nationwide, and overrule *Matter of S-*, 5 I&N Dec. 116 (BIA 1953), as obsolete, in view of subsequent statutory enactments by Congress expanding the classes of aliens who can be lawfully domiciled in the United States.

*CONCURRING OPINION:* Lory D. Rosenberg, Board Member

I respectfully concur.

I concur with the majority opinion in this case and, going further, concur also in the concurring opinion of Board Member Villageliu. In addition, I take issue with the rationale upon which Board Members Heilman and Dunne base the dissenting portion of their separate opinion. They contend that the fact the regulation at 8 C.F.R. § 212.3(f)(2) (1995) was not expressly part of the deliberations of the United States Court of Appeals for the Ninth Circuit in coming to its decision in *Ortega de Robles v. INS*, 58 F.3d 1355 (9th Cir. 1995), diminishes the force of our holding that *Ortega de Robles* controls. Their citations to *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), *United States v. Nixon,* 418 U.S. 683 (1974), and *Accardi v. Shaughnessy*, 347 U.S. 260 (1954), to the contrary, I counter that our position is both required under our own precedent cases and sound under governing principles of statutory interpretation. In fact, the majority opinion's reliance upon the Ninth Circuit's decision is better characterized as complying with the mandate of *Chevron* than, as Board Members Heilman and Dunne suggest, departing from it. I say this for several reasons.

I submit that the Ninth Circuit did address not only the essence of the regulation but the agency interpretation in the course of ruling for Ms. de Robles and essentially rejecting *Matter of S-*, 5 I&N Dec. 166 (BIA 1953), and its progeny. First, for reasons discussed in greater detail in my dissenting opinion in *Matter of Ponce De Leon*, 21 I&N Dec. 154 (BIA 1995), the regulation in question is no more than a restatement of existing Board law, there being

no indication or suggestion that the interpretation is drawn from anywhere other than our decision in *Matter of S-*.

Second, until *Ortega de Robles*, the controlling law in the Ninth Circuit was *Castillo-Felix v. INS,* 601 F.2d 459 (9th Cir. 1979), which, like *Matter of S-, supra* (and the regulation which codified it), held that the requisite domicile "began when an alien was admitted for lawful permanent residence." It did so for two stated reasons: Because temporary residence was inconsistent with "domicile," and because it found the statutory language to be ambiguous and deferred to the agency's interpretation. *Castillo-Felix v. INS, supra*, at 464-66.

Third, at issue are two distinct phrases in section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1994), the statutory section in question which provides for the "212(c) waiver." One is the phrase "lawful unrelinquished domicile," whereas the other is "lawfully admitted for permanent residence." While the Ninth Circuit talks in terms of having deferred previously to the agency, in fact it appears to have done so only because the alternate reading of the language of the statute appeared at the time to amount to an almost exclusively academic distinction ("that a small group of nonimmigrants [such as diplomats] could conceivably qualify as 'lawfully' domiciled . . . does not persuade us that 'lawful' [in "lawful unrelinquished domicile"] should be defined without reference to the phrase 'lawfully admitted for permanent residence'"). *Castillo-Felix v. INS, supra*, at 464.

Under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., supra,* if Congress has spoken to the precise question at issue and its intent is clear, both the court and the agency must give effect to congressional intent and "that is the end of the matter." *Id.* at 843. If Congress has not addressed the precise issue "the question for the court is whether the agency's answer is based upon a permissible construction of the statute." *Id.* While it does not explicitly say so in *Chevron* language, the Ninth Circuit has not so deferred to the construction urged by the agency (the Immigration and Naturalization Service) in *Ortega de Robles*. It reads the statutory language in the context of the statute as amended since the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359, and rejects the Service's argument that the language in *Castillo-Felix v. INS, supra,* concerning when lawful domicile time begins to accrue still applies. In essence, in finding *Castillo-Felix* (which was based upon a prior agency interpretation expressed not only 40 years ago in *Matter of S-, supra,* but repeated in 8 C.F.R. § 212.3(f)(2)), to be "inapplicable to the situation now before us," the Ninth Circuit effectively rejects the agency interpretation and finds that the statutory scheme no longer supports such an interpretation.[1]

While *Chevron* often is argued to require unqualified deference to a permissible agency construction, support can be found in Supreme Court case

---

[1] This is consistent with the much more explicit statutory construction employed in *Castellon-Contreras v. INS*, 45 F.3d 149 (7th Cir. 1995), in which the Seventh Circuit considered whether the terms "lawfully admitted for permanent residence" and "lawful

law for a more flexible rule.  For example in *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987), a majority rejected such a broad, categorical application of the *Chevron* language and rejected as well the agency's position that two standards articulated for political asylum and withholding of deportation, respectively, were identical.  In resolving an issue not dissimilar from that before us here, the Court differentiated between two types of interpretive questions, noting that the "narrow legal question whether two standards are the same is, of course, quite different from the question of interpretation that arises in each case in which the agency is required to *apply* either or both standards to a particular set of facts."  *Id.* at 448 (emphasis added).[2]

Indeed, this Board, acknowledging the principle underlying the analysis in *INS v. Cardoza-Fonseca, supra,* has stated:  "It is a well-established rule of statutory construction that, in cases in which Congress includes particular language in one section of a statute but omits [it] in another . . . , a presumption arises that the disparate inclusion and exclusion was intentional and purposeful."  *Matter of Hou*, 20 I&N Dec. 513, 519-520 (BIA 1992) (citing *INS v. Cardoza-Fonseca, supra*).[3]  As the Seventh Circuit recognized, that principle is no less controlling here, where two distinct phrases employing different language are found in the same statutory section.

---

unrelinquished domicile" had two different meanings, contrary to the Service's interpretation. *Id.* at 152.  The court said that under governing principles of statutory review, it first "must give effect to the unambiguously expressed intent of Congress."  *Id.* at 153 (quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., supra,* at 842-43).  Under these principles, the court defers to a reasonable agency interpretation only if the statute is silent or ambiguous.  *Castellon-Contreras v. INS, supra*, at 153 (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., supra*, at 843-44.  Thus, the Seventh Circuit stated:

> Given that lawful domicile has a meaning distinct from LPR, we find no reason to equate the two terms.  We cannot defer to the BIA's interpretation of § 212(c) because the plain meaning of the term "lawful unrelinquished domicile" discussed above does not lead to either an absurd result, or one at odds with Congressional policy. Section 212(c) was designed to help 'aliens who are likely to have established strong ties to this country,' something not requiring LPR status.

*Castellon-Contreras v. supra,* at 153 (citations omitted).

[2] In other words, where, as here, the issue is one of pure statutory construction, as Board Members Heilman and Dunne correctly note, it is for the court to decide.  Thus, *Cardoza-Fonseca* demonstrates that deference may not apply equally or at all in all situations in which an agency has taken a position on a question of construction.  *See also* Callahan, *The Current Status of the Plain Meaning Rule,* AILA Annual Conference Handbook 475 (1991).

[3] Notably our decision in *Matter of Hou, supra,* also refers to another canon of statutory interpretation "uniquely applicable to the immigration laws, which requires any doubts in construing those statutes to be resolved in favor of the alien due to the potentially drastic consequences of deportation."  *Id.* at 520.  This is a canon we would be well advised to apply here as well.

Finally, consistent with our recognition of the principle in *Matter of Hou,* and according to my interpretation of our delegated power to overrule and invalidate the regulation (discussed extensively in my dissent in *Matter of Ponce De Leon, supra*), there is nothing to prevent the Board from engaging in that legal interpretation, applying those principles of statutory construction, and adopting our holding in this case for application nationwide. Indeed, the Board is delegated authority by the Attorney General, among other powers, to designate precedents which shall be binding "in all proceedings involving the same issue or issues." 8 C.F.R. § 3.1(g) (1995). It is wholly consistent with our mission to exercise our discretion and authority as appropriate and necessary to resolve cases coming before us, and I believe we should do so in a manner that results in a fair and uniform application of the law to all over whom we have jurisdiction. The preferred way to achieve such a result would be for us to take the lead in adopting the holding of *Ortega de Robles v. INS, supra*, and the rationale of *Castellon-Contreras v. INS, supra*, as the administrative precedent, rather than merely to passively follow, as, circuit by circuit, *Matter of S-, supra*, and ultimately the regulation are struck down. In this regard, I note that not only is such an approach one that also is urged by concurring Board Member Villageliu, but it is one consistent with the rationale of agency expertise which underlies the concept of *Chevron* deference.

*CONCURRING IN PART AND DISSENTING IN PART:* Michael J. Heilman, Board Member, in which Mary Maguire Dunne, Vice Chairman, joined

I respectfully concur in part and dissent in part.

The major issue in this appeal is whether the regulation found at 8 C.F.R. § 212.3(f)(2) (1995) applies. It is true that the United States Court of Appeals for the Ninth Circuit has held that the period of lawful temporary residence may count toward the period of lawful unrelinquished domicile required under section 212(c) of the Act, 8 U.S.C. § 1182(c) (1994). The Ninth Circuit's decisions on this matter, however, do not disclose that it took this regulation into account, indeed, do not indicate that the court was even aware of its existence. Thus I am not prepared to go as far as the majority does in holding that the Ninth Circuit's decisions "control" because those decisions relate to a "matter addressed in the regulation."

It is not clear to me that this is even true in a broad sense. The language the Ninth Circuit employs indicates that it saw the domicile issue as a matter of statutory construction, and thus one over which it had de novo review authority. But domicile is not synonymous with "lawful permanent resident status," which is what the regulation deals with. The Attorney General's regulation requires on its face 7 years' lawful permanent resident status. The Ninth Circuit did not consider whether there was a relationship between these two distinct issues.

Furthermore, even if one were to concede an overlap between these two issues, it would be a large leap to assume that the Ninth Circuit's approach would have been the same if the regulatory requirement had been added to its deliberation. Even where de novo review is applied, a pre-existing regulatory interpretation generally imposes a deferential standard of review on the part of the court. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844 (1984) (holding that, in regard to federal court review of agency regulations, "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer"); *United States v. Nixon*, 418 U.S. 683, 696 (1974) (holding that so long as a regulation is in force, "the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and enforce it"); *Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954) (stating that regulations have "the force and effect of law"). That clearly would have placed the matter in a different light, as the court would have been obliged to invalidate the regulation, assuming it had concluded that the regulation was in conflict with its interpretation of domicile. As this outcome does not appear to me to be certain, I am not prepared to state, as the majority does, that the continuing applicability of the regulation is resolved because the Ninth Circuit has addressed the domicile issue.

In view of the importance of this issue, I agree that certification of this appeal to the Attorney General is required.

## BEFORE THE ATTORNEY GENERAL
### (June 29, 1997)

Pursuant to 8 C.F.R. § 3.1(h)(1)(ii), the Board of Immigration Appeals has referred to me for review its decisions in *Matter of Ponce de Leon*, A91 278 310 (BIA Jan. 3, 1996), and *Matter of Cazares,* A92 166 321 (BIA Jan. 3, 1996), both of which involved the question of an alien's eligibility to apply for a waiver of deportability under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c). On November 25, 1996, an interim regulation that resolves the issues in these cases was published at 61 Fed. Reg. 59,824 (1996) (to be codified at 8 C.F.R. pt. 212). Accordingly, I decline to review the cases and remand them to the Board for reconsideration in light of the promulgation of the aforementioned regulation.

## BEFORE THE BOARD ON REMAND
### (October 8, 1997)

BEFORE: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; VACCA, HEILMAN, HOLMES, HURWITZ, VILLAGELIU, COLE, MATHON, and GUENDESLBERGER, Board Members. Dissenting Opinion: ROSENBERG, Board Member.

SCHMIDT, Chairman:

This case is before us on remand from an order of the Attorney General dated June 29, 1997. In our original decision in this case, we addressed the question of the respondent's statutory eligibility for a waiver of inadmissibility under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1994). *Matter of Cazares,* 21 I&N Dec. 188 (BIA 1996). We sustained the appeal and ordered the record remanded to the Immigration Judge. We further ordered that the decision be certified to the Attorney General for review pursuant to 8 C.F.R. § 3.1(h)(1)(ii) (1995).

In her order, the Attorney General noted that an interim regulation that resolved the issue in this case was published on November 25, 1996. *See* 61 Fed. Reg. 59,824 (1996); *see also* 8 C.F.R. § 212.3(f)(2) (1997). The Attorney General therefore declined to review the case and remanded the record to the Board for reconsideration in light of the regulation.

On April 24, 1996, while this case was pending before the Attorney General, Congress amended section 212(c) of the Act by section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, 1277 ("AEDPA"). Under the provisions of that section, an "alien who is deportable by reason of having committed any criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i)" is not eligible for a section 212(c) waiver. Although the Board held that this bar to relief applied only to applications filed after April 24, 1996, the Attorney General vacated the Board's decision and held that the AEDPA amendment applied to cases pending on the date of its enactment. *Matter of Soriano,* 21 I&N Dec. 516 (BIA 1996; A.G. 1997).

The respondent in this case denied deportability, but was found by the Immigration Judge to be deportable under section 241(a)(A)(iii) of the Act, 8 U.S.C. § 1251(a)(2)(iii) (1994). That finding was not challenged on appeal. The respondent is therefore no longer eligible for a section 212(c) waiver. *Matter of Soriano, supra.*

In view of the Attorney General's remand of this case and the 1996 amendment of the statute, our prior order will be vacated. Upon reconsideration, we now find that the respondent is ineligible for section 212(c) relief. Accordingly, the appeal will be dismissed.

**ORDER:** Our decision of January 3, 1996, is vacated.

**FURTHER ORDER:** The appeal is dismissed.

Board Member Lauri S. Filppu did not participate in the decision in this case.

*DISSENTING OPINION:* Lory D. Rosenberg, Board Member

I respectfully dissent.

The respondent originally sought an opportunity to apply and be considered for a waiver under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1994), claiming that the combined period of his domicile in the status of a lawful temporary resident and a lawful permanent resident satisfied the requirements of the statute, but that he was precluded from making his application for such relief from deportation. In light of our determination that *Ortega-Robles v. INS*, 58 F.3d 1355 (9th Cir. 1995), is controlling authority in cases coming before us that arise within the jurisdiction of the United States Court of Appeals for the Ninth Circuit, we held that the decision of the Immigration Judge, issued in reliance on our prior precedent, was legally erroneous. *See Matter of Cazares,* 21 I&N Dec. 188 (BIA 1996). Since that time, the statute has been amended, and the appeal is back before us pursuant to a remand by the Attorney General.

We long have held that the applicable law is that which is in place at the time of our adjudication. *Matter of U-M-*, 20 I&N Dec. 327, 333 (BIA 1991), *aff'd*, 989 F.2d 1085 (9th Cir. 1993) (citing *Ziffrin v. United States*, 318 U.S. 73 (1943)). We apply this principle not only to changes in the statute occurring during the time a case is pending before us, but also to controlling changes in interpretation of the statute occurring before issuance of a final administrative order. *See, e.g., Matter of Mogharrabi*, 19 I&N Dec. 439, 441 (BIA 1987) (recognizing that the Supreme Court decision in *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987), rejecting our conclusion in *Matter of Acosta,* 19 I&N Dec. 211 (BIA 1985)—that the clear probability and well-founded fear standards articulated in the statute were not meaningfully different—required disposition of the appeal in a 1985 case according to the law as it existed at the time of our 1987 review).

Nevertheless, as discussed below, I would find that the Immigration Judge's refusal to afford the respondent an opportunity to apply and be considered for a waiver under section 212(c) of the Act constitutes an error of constitutional proportion, prejudicial to the respondent. Notwithstanding the subsequent change in the statutory terms of the law, I conclude that under these circumstances equity requires that the respondent be permitted to apply for and have his application adjudicated under the law and standards that existed at the time that he was precluded from applying for such relief. *See Matter of Yeung,* 21 I&N Dec. 610 (BIA 1996, 1997) (Rosenberg, dissenting). Consequently, I dissent from the majority decision vacating our original order and dismissing the respondent's appeal.

## I. LEGAL AND PROCEDURAL BACKGROUND

In *Matter of Cazares, supra,* we decided the appeal of a respondent who claimed to be statutorily eligible in all respects to apply for a waiver under section 212(c) of the Act, but had been denied an opportunity to seek such relief from deportation. We addressed the fundamental question whether a

lawful permanent resident who had resided lawfully in the United States could establish the requisite statutory period of lawful domicile by counting time domiciled as a lawfully temporary resident and as a lawful permanent resident for a combined period totaling more than 7 years.

We ruled that in cases arising within the jurisdiction of the United States Court of Appeals for the Ninth Circuit, we would follow the holding of that court in *Ortega de Robles v. INS, supra,* that a lawful permanent resident, who gained such status under section 245A of the Act, 8 U.S.C. § 1255a (1994), by first becoming a lawful temporary resident, establishes "lawful domicile" for purposes of eligibility under section 212(c) of the Act as of the date the alien filed his or her application for temporary resident status. Consequently, we remanded the respondent's case to the Immigration Judge to allow the respondent the opportunity, which he had previously been denied contrary to the terms of the statute as interpreted by the Ninth Circuit, to apply for a section 212(c) waiver.

Despite stating that *Ortega de Robles v. INS, supra*, is in conflict with and does not explicitly address the provisions of 8 C.F.R. § 212.3(f)(2) (1995), a regulation that would otherwise control the decisions of Immigration Judges and this Board, the majority determined that the Board would follow the holding in *Ortega de Robles* in cases arising within the Ninth Circuit where the court had ruled on the specific legal issue before the Board, the Immigration and Naturalization Service did not argue that the relevant regulation represented anything other than the codification of prior Board precedent, and the Service had advised the Board that the Attorney General had decided not to seek further review of that court decision. *Cf. Matter of Ponce de Leon* 21 I&N Dec. 154 (BIA 1996; A.G., BIA 1997). We then certified our decision to the Attorney General for review under 8 C.F.R. § 3.1(h)(l)(ii) (1995).

On June 29, 1997, the Attorney General remanded the case to us, noting that an interim regulation, purportedly dispositive of the issue on certification, had been published on November 25, 1996. *See* 61 Fed. Reg. 59,824 (1996); *see also* 8 C.F.R. § 212.3(f)(2) (1997). The interim regulation, which became final on August 14, 1997, recognized that "[u]nder recent 212(c) case law, an alien who has acquired lawful permanent resident status under section 245A of the Act may accrue the seven (7) years of lawful domicile . . . from the date of his or her application for temporary resident status." 62 Fed. Reg. 43,466 (1997) (supplementary information). The Supplementary Information notes that two recent legislative enactments "affect the availability of relief" under section 212(c). *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 440(d), 110 Stat. 1214, 1277 ("AEDPA") (restricting the classes of aliens eligible for such relief); Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, § 309(c)(1)(A), 110 Stat. 3009-546, 3009-625 ("IIRIRA")(limiting the application of the amended statute with regard to the

new provision for cancellation of removal to claims raised in proceedings commencing after April 1, 1997).

## II. AGENCY ADOPTION OF THE JUDICIAL RESOLUTION OF THE UNDERLYING LEGAL ISSUE OF STATUTORY INTERPRETATION

In *Ortega de Robles v. INS, supra*, the court of appeals revisited its interpretation of the statutory language of section 212(c) in the context of the statute as amended since enactment of the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359, and concluded that the statutory scheme no longer supports the interpretation it had adopted in *Castillo-Felix v. INS,* 601 F.2d 459 (9th Cir. 1979). The court found that decision, which had adopted a prior agency interpretation, expressed 40 years ago in *Matter of S-*, 5 I&N Dec. 116 (BIA 1953), and reiterated in 8 C.F.R. § 212.3(f)(2), to be "inapplicable to the situation now before us."

In my concurrence in *Matter of Cazares, supra*, I noted that the court of appeals' conclusion in *Ortega de Robles* was consistent with the much more explicit statutory construction employed in *Castellon-Contreras v. INS*, 45 F.3d 149 (7th Cir. 1995), in which the United States Court of Appeals for the Seventh Circuit considered whether the terms "lawfully admitted for permanent residence" and "lawful unrelinquished domicile" had two different meanings, contrary to the Immigration and Naturalization Service's interpretation. *Id.* at 152. The court said that under governing principles of statutory review, it first "'must give effect to the unambiguously expressed intent of Congress.'" *Id.* at 153 (quoting *Chevron, U.S.A., Inc., v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 (1984)). Under these principles, the court defers to a reasonable agency interpretation only if the statute is silent or ambiguous. *Castellon-Contreras v. INS, supra,* at 153 (citing *Chevron, U.S.A., Inc., v. Natural Resources Defense Council, Inc., supra,* at 843-44). Thus, the Seventh Circuit stated:

> Given that lawful domicile has a meaning distinct from LPR, we find no reason to equate the two terms. We cannot defer to the BIA's interpretation of § 212(c) because the plain meaning of the term "lawful unrelinquished domicile" discussed above does not lead to either an absurd result, or one at odds with Congressional policy. Section 212(c) was designed to help "aliens who are likely to have established strong ties to this country," something not requiring LPR status.

*Id*. (citation omitted); *see also Morel v. INS*, 90 F.3d 833 (3d Cir. 1996); *White v. INS*, 75 F.3d 213 (5th Cir. 1996); *Avelar-Cruz v. INS*, 58 F.3d 338 (7th Cir. 1995); *Melian v. INS*, 987 F.2d 1521 (11th Cir. 1993); *Rosario v. INS,* 962 F.2d 220 (2d Cir. 1992).

The regulation, published by the Attorney General while *Matter of Cazares* and *Matter of Ponce De Leon* were pending before her and prior to the April 1, 1997, effective date of subsequent changes to the statutory

eligibility language pertaining to lawful domicile, suggests strongly that the Attorney General wished to bring agency policy and practice into compliance with the rulings of the several federal courts that had addressed the treatment of persons first admitted for lawful temporary residence, whose status was later adjusted to that of lawful permanent resident. It also is notable that, in enacting the cancellation of removal provision of the IIRIRA that is widely accepted as replacing waiver relief under former section 212(c) of the Act, Congress crafted the terms of that provision explicitly to acknowledge the distinction between the acquisition of lawful permanent resident status and the period of residence after admission in any status. *See* section 240A(a) of the Act, *enacted at* IIRIRA § 304(a)(3), 110 Stat. at 3009-587 (to be codified at 8 U.S.C. § 1229b(a)).

## III. EFFECT OF EQUITABLE CONSIDERATIONS ON OTHERWISE APPLICABLE STATUTORY AND REGULATORY CHANGES

Neither the propriety, the wisdom, nor the fairness of the interpretation of the Court of Appeals for the Ninth Circuit, or of the courts of appeals for the Seventh, Fifth, Third, and Second Circuits, or other circuits that recognized the distinction between the phrases "lawful domicile" and "lawful permanent resident" status has been refuted, or even questioned, in subsequent legislative or regulatory actions. Indeed, the recent agency regulations conform to those decisions, and the recent legislative changes affecting proceedings initiated after April 1, 1997, provide specifically for calculating time spent after admission in any status in determining eligibility for cancellation of removal.

The regulatory limitation that the new rule "only affects the cases not covered by these new restrictions, i.e., those commenced before April 1, 1997," limits its application to those applicants for a section 212(c) waiver who are "not barred by AEDPA." *See* 62 Fed. Reg. 43,466 (1997) (supplementary information). Under the circumstances of this case, however, neither this promulgation nor the enactment of the AEDPA expressly mandates the vacation of our original order and dismissal of the respondent's appeal on remand from the Attorney General.

Rather, I believe that, given our holding that an erroneous legal determination derailed the respondent's case originally, the question before us on remand from the Attorney General is whether there is a basis, notwithstanding the statutory changes in the law adverse to the respondent's being considered for relief under section 212(c), that compels a result other than outright dismissal of his appeal? I conclude that there is such a basis and that it is found within our equitable authority to resolve the respondent's appeal on remand from the Attorney General.

Generally speaking, it is true that according to the Attorney General's decision on certification in *Matter of Soriano,* 21 I&N Dec. 516 (BIA 1996;

A.G. 1997), any alien whose application for a waiver under section 212(c) is pending or might be made is precluded from seeking such relief unless he or she falls within the extremely limited group of persons subject to a conviction for a single crime of moral turpitude, or two convictions in which both crimes are not crimes of moral turpitude as then-defined by the statute. *See* section 440(d) of the AEDPA. Unless limited by express statutory language or found to have an impermissible retroactive effect, the rule that we adjudicate a case according to the law in effect at that time applies when such an application is to the respondent's disadvantage no less than it applies when such application works to his advantage.

Our decision in *Matter of Cazares* was rendered in early 1996, however, prior to the enactment of the AEDPA. Although *Matter of Cazares* was certified to the Attorney General, the applicability of a precedent decision is not stayed or diminished by the fact of certification. It is possible that certain respondents, benefitting from our precedent decision, may not have been foreclosed, in the first instance, from submitting and obtaining favorable adjudications of applications for relief under section 212(c). Others who were able to submit their applications, but whose cases were not concluded prior to enactment of section 440(d) of the AEDPA, ultimately were subject to denial of their applications under *Matter of Soriano, supra.* This latter group might be viewed as having had a fair opportunity to seek section 212(c) relief according to the terms of the then-existing statute and our decision in *Matter of Cazares, supra,* but as later being divested of their eligibility for such relief because of a change in the statute determined by the Attorney General not to be retroactive or to have retroactive effect.

Those are not the circumstances in the respondent's case. In his case, the respondent was foreclosed from applying for relief some 2 or more years earlier, under the prior, far more generous and forgiving version of the statute in terms of the scope of grounds of deportability that could then be waived. According to the law of the circuit within which his case arose, he was entitled to apply and be considered for a waiver before the recent regulatory or statutory changes took place. Denial of the opportunity to apply for relief for which he was eligible under the statute deprived him of the opportunity to present his evidence and obtain a reasoned decision concerning his eligibility and entitlement to a waiver as a matter of discretion.

As I stated in my recent dissent in *Matter of Yeung, supra,* were we writing on a clean slate in a case in which the respondent had first asserted eligibility for the waiver in question during an exclusion or deportation proceeding initiated after the amended statute took effect, we would be required to apply the statute strictly according to its terms and find him ineligible for a waiver under current the section 212(c). However, we are addressing a case in which a procedural defect of constitutional proportion was later found, pursuant to the authority of the court of appeals, to have improperly prevented the respondent from applying for a form of statutory relief.

The intervening legislation in no way supersedes the holding of the Court of Appeals for the Ninth Circuit that the former section 212(c) had been erroneously interpreted by the Board in violation of the plain terms of the statute. The enactment of the AEDPA does not change the fact that our prior interpretation of section 212(c) of the Act violated the respondent's right to due process of law under the Fifth Amendment by precluding him from an opportunity to obtain relief for which he was statutorily eligible. Similarly, the intervening legislation does not change the fact that, prior to its enactment, the respondent was prejudiced by an error of constitutional magnitude.

According to the substantive determination made by the court of appeals in *Ortega-Robles v. INS, supra,* the opportunity or right to apply for a section 212(c) waiver under the statute then in existence should have been available to the respondent. That he was denied the opportunity to seek such a waiver is not merely harmless error. *See Colindres-Aguilar v. INS*, 819 F.2d 259 (9th Cir. 1987) (finding prejudice not harmless where counsel could have better marshaled facts in asylum case and sought voluntary departure); *see also Rabiu v. INS,* 41 F.3d 879 (2d Cir. 1994) (holding counsel's failure to file an application resulting in loss of an opportunity for a hearing to constitute ineffective assistance and a due process violation which is inherently prejudicial); *Waldron v. INS*, 17 F.3d 511, 518 (2d Cir.)(holding no showing of prejudice required where a fundamental right is at stake), *cert. denied,* 513 U.S. 1014 (1994); *Sewak v. INS*, 900 F.2d 667, 670, n.7 (3d Cir. 1990) (rejecting harmless error doctrine where respondent was denied his fundamental statutory right to receive notice of hearing); *Shahandeh-Pey v. INS,* 831 F.2d 1384 (7th Cir. 1987) (finding harmless error doctrine not to require proof that claim would have succeeded on the merits so long as violation had the potential for effecting the outcome of the hearing).

From its inception, the Board has embraced the concept of granting equitable relief nunc pro tunc, finding it to be appropriate and within the Attorney General's authority to extend in cases involving exclusion and deportation. In *Matter of L-*, 1 I&N Dec. 1, 5 (BIA, A.G. 1940), the first case decided by the Board under the delegated authority of the Attorney General, the Attorney General found that it would be capricious to conclude that "the technical form of the proceedings" would determine the result, and instructed that consideration for relief in deportation proceedings should relate back to the time at which the respondent was readmitted notwithstanding his conviction. The Attorney General held that the respondent should "be permitted to make the same appeal to discretion that he could have made if denied admission in 1939." *Id*. at 6.

The term "nunc pro tunc" is defined as a "phrase applied to acts allowed to be done after the time when they should be done, with a retroactive effect, *i.e.*, with the same effect as if regularly done . . . . Nunc pro tunc signifies now for then, or, in other words, a thing is done now, which shall have same legal force and effect as if done at time when it ought to have been done." Black's

Law Dictionary 1069 (6th ed. 1990); *see also Matter of Garcia,* 21 I&N Dec. 254 (BIA 1996) (Guendelsberger, joined by Schmidt, dissenting).

As I discussed in *Matter of Yeung, supra,* nunc pro tunc action has been taken where "complete justice to an alien dictates such an extraordinary action" and the "record before us presents many sympathetic and mitigating factors." *Matter of T-*, 6 I&N Dec. 410, 413 (BIA 1954) (considering whether an application filed under the 1917 Act was subject to the terms of the 1952 Act).

Typically, a procedural error, such as the erroneous denial of an opportunity to apply for an asserted form of relief for which the respondent is eligible, is cured by simply holding a new hearing "in compliance with due process requirements," as this remedy restores the wronged applicant to the position in which he found himself prior to the procedural error. *Batanic v. INS*, 12 F.3d 662, 667 (7th Cir. 1993); *see also Shahandeh-Pey v. INS, supra,* at 1390 (remanding to allow an alien denied the opportunity to present evidence and to "have his day in court" to present all of his evidence in support of his application for asylum in lieu of deportation).

When remand for reopening, such as we ordered in our original decision in *Matter of Cazares*, does not cure the inequity of the respondent's earlier treatment—as it cannot here because of the intervening amendment of the statute—it is then that we approach the concept of nunc pro tunc relief. *Batanic v. INS, supra* (holding that where denial of the right to counsel deprived the respondent of his right to apply for asylum, counsel's ability to protect the respondent's rights in a reconvened hearing must include the ability to apply for asylum nunc pro tunc because of an intervening change in the statute). In particular, "*when the procedural defect has also resulted in the loss of an opportunity for statutory relief,*" the demands of due process require more than merely reconvening the hearing. *Id*. at 667 (emphasis added). When a violation of due process results in a denial of a fair hearing on the question of eligibility for relief, the respondent should be afforded the opportunity for consideration of his claim based upon the law as it existed at the time he was deprived of his rights. *Snajder v. INS*, 29 F.3d 1203, 1208 n.12 (7th Cir. 1994).

Having been found by the court of appeals to be erroneous, our original interpretation of the statutory requirements, which was invoked by the Immigration Judge below to deny the respondent his right to apply for section 212(c) relief, resulted in a denial of due process. I therefore cannot accept the majority's conclusion in the present case on remand from the Attorney General to be either necessary or proper, but instead to perpetuate the inequity and unfairness of the treatment the respondent was accorded. The process due the respondent—an opportunity to present his application for a section 212(c) waiver for adjudication—has not become moot in light of the change in the law rendering the respondent substantively ineligible for the waiver for other reasons; instead, the process due the respondent requires that the

respondent "be given the advantage of the law that existed when his first hearing was held." *Batanic v. INS, supra,* at 668.

## IV. CONCLUSION

In conclusion, I note as I did in my dissenting opinion in *Matter of Yeung, supra,* that to allow an amendment of the statute to virtually excuse our prior erroneous interpretation precluding the respondent from applying for available relief from deportation, effectively relieves us of any responsibility for the resulting procedural defect in the proceedings. What is more, it leaves the respondent subject to deportation despite the determination of the court of appeals that has actually been endorsed by our precedent, as well as subsequent legislation and rulemaking. I find it difficult to accept that redress for violations of due process and fundamental fairness in deportation proceedings should be so vulnerable to the coincidental changes in the law.